**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandee Rosales,<br><br>                    Plaintiff,<br><br>v.<br><br>Sarah Rollag, et al.,<br><br>                    Defendants. | No. CV-22-01581-PHX-DJH<br><br>**ORDER** |

This case arises from a rear-end collision which Plaintiff Brandee Rosales ("Plaintiff Rosales") alleges caused the premature birth of her daughter, A.T. ("Plaintiff A.T."), as well as other injuries (collectively, "Plaintiffs"). (Doc. 5-1 at ¶¶ 13–16). Defendant Sarah Rollag ("Defendant") has filed two motions to exclude Plaintiffs expert witnesses. (Docs. 27 & 28). Defendant argues that Plaintiffs' experts, Dr. Nathan Hirsch and Dr. Luay Shayya, do not base their opinions on sufficient facts or data as required by Federal Rule of Evidence 702, so, the Court must exclude them.[1] The Court will limit the experts testimony, but will not exclude them.

**I.    Background**

Plaintiff Rosales alleges that she was parked in the center turn lane of 35th Avenue in Phoenix, Arizona when she was rear ended by Defendant, who failed to control her speed, on September 29, 2020. (Doc. 5-1 at ¶¶ 13–16). Plaintiff Rosales was twenty weeks pregnant at the time of the collision, so as a precaution, she sought medical care the next

---

[1] References to "Rules" herein are in reference to the Federal Rules of Evidence, unless otherwise stated.

day.  (Doc. 27 at 2; Doc. 33 at 4).  She was diagnosed with headache, neck and lumbar sprain; but was not shown to have and placental abnormalities.  (Doc. 33-7 at 3).  On October 6, 2020, Plaintiff Rosales again sought care as she experienced a large leakage of fluids which soaked the seat of her vehicle.  (Doc. 27 at 2; Doc. 33 at 4).  She was diagnosed with "suspect preterm premature rupture of membranes" and discharged with instructions to rest.  (Doc. 27 at 2; Doc. 33 at 4).  Plaintiff Rosales again sought medical care due to a gushing of vaginal fluid and on December 18, 2020, she underwent a c-section and gave birth to Plaintiff A.T. (Doc. 27 at 4; Doc. 33 at 5).  Plaintiff A.T. was born eight weeks premature and required a four-week long stay at the hospital.  (Doc. 33 at 5).

After giving birth, Plaintiff Rosales went to the ER due to shortness of breath and chest discomfort over the past day.  (Doc. 27-3 at 1).  She was diagnosed with a pulmonary embolism, Covid-19 and pneumonia.  (*Id*. at 7).  Plaintiffs allege their injuries can be linked to the crash.  (Doc. 5-1 at ¶ 24).  Plaintiffs argues that, because of each of their injuries, Plaintiff Rosales incurred $157,142.27 in medical expenses and Plaintiff A.T. incurred $172,896.00 in medical expenses.  (Doc. 33 at 5).  Plaintiffs have brought claims for negligence (Doc. 5-1 at ¶¶ 20–26) and negligence *per se* (*Id*. at ¶¶ 27–32) against Defendant.

To substantiate their claims for damages, Plaintiffs retained two expert witnesses: Dr. Hirsch and Dr. Shayya.  (Doc. 33 at 5; Doc. 34 at 3).  Dr. Hirsch is a board certified OBGYN and was retained to "to review all of Plaintiffs' medical records and evaluate whether Ms. Rosales' premature rupture of the membranes, premature birth of her baby and resulting NICU stay were related to the collision."  (Doc. 33 at 5).  Based on this review, Dr. Hirsch concluded that the car accident caused Plaintiff Rosales injuries and the premature birth of Plaintiff A.T.  (Doc. 27-12 at 2).  Plaintiffs also retained Dr. Shayya, a board-certified neurologist, to "render causation opinions regarding [Plaintiff Rosales'] alleged injuries." (Doc. 28 at 4).  Dr. Shayya has reviewed Plaintiff Rosales post-accident medical records and one pre-accident record and concluded that the medical care she received was related to the collision with Defendant.  (*Id*.)  Now, Defendant seeks to

exclude these experts under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  (Docs. 27 & 28).

**II.     Legal Standard**

Rule 702 of the Federal Rules of Evidence tasks the trial court with a special "gatekeeping" obligation to ensure that any expert testimony provided is relevant and reliable.  *Daubert v. Merrell Dow Pharm*., Inc., 509 U.S. 579, 589 (1999).  A qualified expert may testify based on their "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence."  Fed. R. Evid. 702(a).  An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education."  *Id*.  The expert's testimony must also be based on "sufficient facts or data," be the "product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case."  *Id*. at 702(b)–(d).  "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588).

*Daubert's* general holding applies to an expert's testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).  *Daubert* suggests several factors for courts to consider in discharging its gatekeeping obligation; however, these factors do not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology.  *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to a police officer's testimony based on twenty-one years of experience working undercover with gangs). Furthermore, "[t]he inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594.  "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate."  *Id*.  The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and that the proposed testimony is admissible under Rule 702.  *See Lust v. Merrell Dow Pharm., Inc*., 89 F.3d 594, 598 (9th Cir. 1996).

The trial court is vested with broad discretion deciding whether an expert is qualified to testify. *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir.1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous").

That the opinion testimony aids, rather than confuses, the trier of fact goes primarily to relevance. *See Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1161 (D. Ariz. 2014) (citing *Primiono v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)). Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. However, an expert witness, "cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (internal citations omitted); *see also* Fed. R. Evid. 704.

## III. Discussion

Defendant argues that Dr. Hirsch should be excluded as his opinion is not based on sufficient facts or data, as required by Rule 702, and because he failed to consider alternative explanations for Plaintiff's alleged injuries. (Doc. 27 at 11, 13). Defendant also argues that Dr. Hirsch cannot opine on the reasonableness of Plaintiff's medical expenses because he is not licensed to practice in Arizona. (*Id*. at 14–15). Plaintiffs argue that Dr. Hirsch's conclusions "are based off the records he reviewed and are justifiably derived from his expertise and review of the records in this case." (Doc. 33 at 10). Plaintiffs also argue that Dr. Hirsch did consider alternative theories for Plaintiff's injuries and ruled them out. (*Id*. at 12–14). They finally argue that Dr. Hirsch's 50 years of experience as an OBGYN provide a sufficient foundation for his testimony regarding the reasonableness of Plaintiff's treatment and subsequent expenses. (*Id*. at 14).

As for Dr. Shayya, Defendant also argues that his opinions are not based on sufficient facts or data and that he failed to consider reasonable alternatives. (Doc. 28 at 7, 10). Plaintiffs argue that Dr. Shayya reviewed their medical records and

bills and came to his conclusion based on these records, his education, and experiences. (Doc. 34 at 4). They also argue that he properly considered alternative explanations. (*Id*. at 9). The Court will review each argument for and against exclusion in turn.

**A.     Dr. Hirsch**

In his expert report, Dr. Hirsch concludes that "[w]ith reasonable certainty the auto accident trauma caused the cascade of events, the preterm premature rupture of membranes and premature birth of [A.T.] Also, the bilateral pulmonary emboli were directly related to the strict bedrest." (Doc. 27-12 at 2). Dr. Hirsch states that he relied on the following materials to reach this conclusion:

- Banner Thunderbird Medical Center medical bills and records.
- North Valley Emergency Specialists medical bills.
- Southwest Diagnostic Imaging medical bills.
- Chandler Regional Medical Center medical bills and records.
- ER Medical Specialists medical bills.
- Chandler Radiology Associates medical bills.
- ClinPath Diagnostics medical bills and records.
- New Horizon Women's Care/AZ OBGYN Affiliates, PC medical bills and records.
- Sonora Quest Laboratories medical bills and records.
- Alliance Cancer Care/ American Oncology Partners medical bills and records.
- Arizona Neurology and Sleep Center medical bills and records.

(*Id*. at 1). As the "relevant facts" to support this conclusion, Dr. Hirsch states that there were contradictory tests for preterm premature rupture of membranes and that, "at approximately 30 + 5 weeks total rupture of the membranes occurred." (*Id*. at 2).

Dr. Hirsch was also deposed. (Doc. 33-2). During his deposition, Dr. Hirsch was asked about Plaintiff Rosales' marijuana use. He responded that consistent marijuana use can cause a premature delivery, but that she was not consistently smoking marijuana during this pregnancy. (Doc. 33-2 at 2). Dr. Hirsch stated that marijuana use one to two times per week is not excessive and that this would not have adversely affected her pregnancy. (*Id*. at 3). He based this opinion on internet articles, such as those published by the Mayo Clinic. (*Id*. at 4).

- 5 -

Dr. Hirsch was also asked about Plaintiff Rosales' bacterial vaginosis and how that could have affected her premature need to have a c-section. (*Id*. at 5). Dr. Hirsch stated that bacterial vaginosis is not a "true" bacterial infection and that it does not cause a premature delivery or rupture of membranes because it is not an "external infection." (*Id*. at 5–6). Dr. Hirsch was challenged as to that point with the fact that the CDC states bacterial vaginosis can affect a pregnancy. He responded that "[i]t's been stated that it does not cause premature rupture of the membranes or premature birth." (*Id*. at 6).

Dr. Hirsch was later asked about his opinions regarding the injuries Plaintiffs sustained because of the collision with Defendant. (*Id*. at 11). He responded that "[t]he car accident contributed to the early rupture of membranes of which was a leak which set up milieu of changes that caused the premature birth of the baby after the rupture of membranes at 30 weeks and a few days, and also contributed to bilateral pulmonary emboli." (*Id*.) He was also asked about the reasonableness of the treatments and if associated costs were reasonable, to which he responded that they seemed appropriate. (*Id*. at 13–14). He added that every baby that stays at the NICU, unfortunately, incurs "a couple hundred thousand dollars of cost." (*Id*. at 15). He states that "when I say appropriate, it seems like a lot of money, but it's everywhere." (*Id*.)

Dr. Hirsch has also submitted an affidavit. (Doc. 33-1). He states that "[a]s a practicing Obstetrician and Gynecologist of over fifty (50) years, I have evaluated, treated, and made management decisions for numerous patients with symptomology such as those [Plaintiff] presented with" after her accident. (*Id*. at 1). He also asserts that he bases his opinions on his training, education, and experience and that he states them to a reasonable degree of medical and scientific probability. (*Id*. at 2). He notes that the medical records he reviewed contained Plaintiff Rosales' past obstetrical history, which included a miscarriage and a second pregnancy that resulted in a c-section at 39 gestational weeks as well as her use of marijuana prior to and during her pregnancy. (*Id*. at 3). Dr. Hirsch further states that, in his opinion, Plaintiff Rosales' prior pregnancy history and marijuana use did not cause her premature delivery or rupture of membranes. (*Id*. at 4). Instead, he

asserts that the rear-end accident she was involved in caused her preterm premature rupture of membranes and the subsequent need for a c-section. (*Id.*)

### 1.     Sufficient Facts and Data

Defendant first argues that Dr. Hirsch's opinions are not based on sufficient facts or data because he considered only post-accident records in developing his opinions. (Doc. 27 at 12).

Rule 702 dictates that an expert's opinion be "based on sufficient facts or data." Fed. R. Evid. 702 (c). "A trial court should admit medical expert testimony if physicians would accept it as useful and reliable," but it need not be conclusive because "medical knowledge is often uncertain." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Where the foundation is sufficient, the litigant is "entitled to have the jury decide upon [the experts'] credibility, rather than the judge." *Id*. Furthermore, "[w]here, as here, the experts' opinions are not the 'junk science' Rule 702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system—vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]" *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017). In other words, when the opponent's arguments go to the weight of an expert's opinion, rather than its admissibility, the Court should not exclude the expert but allow the adversarial process to test the credibility of their opinion as it is the jury, not the Court, who judges credibility. *Updike, v. Am. Honda Motor Co. Inc., et al.*, 2024 WL 4182232, at *4, *12 (D. Ariz. Sept. 13, 2024) (citations omitted).

Here, the Court finds that Dr. Hirsch relied on sufficient facts and data to reach his opinions. He reviewed the extensive medical records in this case from many different hospitals and health care centers. (Doc. 27-12 at 1). Indeed, as Plaintiffs note, these records included information about Plaintiff Rosales' prior pregnancies and miscarriage. (Doc. 33-8 at 1; Doc. 35 at 2). While, as Defendant argues, Dr. Hirsch never physically examined Rosales, (Doc. 27 at 7), this argument goes to the weight of his opinion, not its admissibility. *See Williams v. Daszko*, 2018 WL 2684314, at *6 (E.D. Cal. June 5, 2018)

1  (holding that medical expert opinions that do not include the expert's physical examination
2  of the patient are still "based on sufficient facts and data" and that challenges to such
3  opinions "go to weight, not admissibility").

4  Dr. Hirsch also states in his affidavit that "[a]s a practicing Obstetrician and
5  Gynecologist of over fifty (50) years, I have evaluated, treated, and made management
6  decisions for numerous patients with symptomology such as those [Plaintiff Rosales]
7  presented. (Doc. 33-1 at 1). The foundation upon which Dr. Hirsch uses to support his
8  opinions is sufficient. *See Joiner*, 522 U.S. at 142. So, this evidence "should be attacked
9  by cross examination, contrary evidence, and attention to the burden of proof [rather than]
10 exclusion." *Primiano*, 598 F.3d at 564.

### 2.     Alternative Explanations

Defendant also argues that the Court should exclude Dr. Hirsch as he failed to consider alternative explanations for Plaintiffs injuries. (Doc. 27 at 13). Not so.

This argument relies on the "differential diagnosis" sub-body of *Daubert* law which has been endorsed by the Ninth Circuit. Differential diagnosis is "the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir. 2003). "The first step in the diagnostic process is to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration. The issue at this point in the process is which of the competing causes are generally capable of causing the patient's symptoms or mortality." *Clausen*, 339 F.3d at 1057–58.

The second step is for the expert to "engage in a process of eliminating or ruling out the identified potential causes." *Stanley v. Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) "When an expert rules out a potential cause in the course of a differential diagnosis, the 'expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation.' " *Messick*, 747 F.3d

- 8 -

at 1198 (citing *Clausen*, 339 F.3d at 1058). "A district court is justified in excluding evidence if an expert 'utterly fails . . . to offer an explanation for why the proffered alternative cause' was ruled out." *Clausen*, 339 F.3d at 1058.

Here, the Court finds that Dr. Hirsch did not "utterly fail" to offer an explanation for why alternative causes were ruled out. *See id*. Dr. Hirsch relied on Plaintiff Rosales extensive post-accident medical records, which include her past obstetrical history, such as a miscarriage and a second pregnancy that resulted in a c-section at 39 gestational weeks as well as her use of marijuana prior to and during her pregnancy. (Doc. 33-1 at 3). During his deposition, Dr. Hirsch stated that he did not include information about Plaintiff Rosales' bacterial vaginosis because it does not cause a premature delivery or rupture of membranes as it is not an "external infection." (Doc. 33-2 at 5–6). This testimony shows that Dr. Hirsch was aware of this condition but ruled it out. *Stanley*, 11 F. Supp. 3d at 1001. He also considered Plaintiff Rosales' marijuana use but concluded that, because she was not consistently smoking marijuana during this pregnancy, there would be no detrimental effect to the pregnancy. (Doc. 33-2 at 3). Again, Dr. Hirsch considered, but disregarded, this potential cause. *See Clausen*, 339 F.3d at 1058. So, based on the record before it, the Court concludes that Dr. Hirsch did not fail to consider alternative explanations for Plaintiff's injuries. *Id*. To the extent Defendant argues he did not "adequately rule out" alternative causes for Plaintiff Rosales' injuries, this is a credibility determination that goes to the weight of his opinions, not their admissibility. *See Lopez v. Johnson & Johnson*, 654 F. Supp. 3d 997, 1007 (C.D. Cal. 2023).

### 3. The Reasonableness of Plaintiff's Medical Expenses

Defendant argues lastly that Dr. Hirsch cannot opine on the reasonableness of Plaintiffs' medical expenses because he is not licensed to practice in Arizona. (Doc. 27 at 14–15).

In Dr. Hirsch's report, he lists numerous records he has reviewed, but these all appear to be Plaintiff Rosales' records. (Doc. 27-12 at 2). In his deposition, Hirsch was asked whether he makes any statement in his report regarding Plaintiff A.T.'s NICU

records, to which he said, "not in the report." (Doc. 27-14 at 22). He also admits that he did not receive any records reflecting care and treatment for Plaintiff A.T. (Doc. 27-13 at 16). He states that he received hospital records that "talked about [A.T.]," however. (*Id*.) So, it is unclear what, if any, of Plaintiff A.T.'s medical records or associated billing records he reviewed. This places Defendants at a disadvantage and the Court finds Dr. Hirsch should not opine on whether Plaintiff A.T.'s cost of treatment was reasonable without explaining what he examined or otherwise considered in forming this opinion. *See* Fed. R. Evid. 702(c). So, Plaintiffs may not proffer Dr. Hirsch for the reasonableness of A.T.'s treatment or costs without more. *See Lust*, 89 F.3d at 598 (stating that the proponent of expert testimony has the ultimate burden of showing that the expert is qualified and that the proposed testimony is admissible under Rule 702).

Dr. Hirsch can testify about the reasonableness of Plaintiff Rosales' treatment and expenses, however, since this testimony is based on his knowledge and experience as well as sufficient facts. *See Hankey*, 203 F.3d at 1169; *see also Longoria v. Kodiak Concepts LLC*, 2021 WL 1100373, at *11 (D. Ariz. Mar. 23, 2021) ("The proponent of expert testimony need only lay a 'minimal foundation' of 'knowledge, skill, experience, training, or education' in the topic at hand.") (citing *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994)). Even if Dr. Hirsch was a lay witness, which he is not, he could likely testify to the reasonable expenses incurred by Plaintiff Rosales. *See* Fed. R. Evid. 701(a) (stating that lay witness testimony must be "rationally based on the witness's perception."). Dr. Hirsch is not a lay witness, however. He is an expert with over fifty-years of experience in the medical field—specifically, as a practicing Obstetrician and Gynecologist. (Doc. 33-1 at 1). He has vast experience treating patients such as Plaintiff Rosales. (*Id*.) When asked about the reasonableness of Plaintiff's expenses and treatments, he stated that they were appropriate. (Doc. 33-2 at 13–14). This evidence is ripe for vigorous cross-examination—not exclusion. *See Primiano*, 598 F.3d at 564.

In sum, Dr. Hirsch can testify to the reasonableness of Plaintiff Rosales' treatment and medical expenses, but not Plaintiff A.T.'s, because he has not reviewed records

reflecting her care or treatment.

**B.     Dr. Shayya**

Similar to its previous arguments, Defendant also argues that (1) Dr. Shayya's expert medical opinions do not rely on sufficient facts and data and (2) Dr. Shayya failed to consider reasonable alternative causes for Plaintiff Rosales' injuries. (Doc. 28 at 7, 10).

Dr. Shayya is a board-certified neurologist who Plaintiffs retained as a neurology expert. (Doc. 34 at 3). Dr. Shayya states that he has reviewed the following records related to this matter: SimonMed Imaging records from March 12, 2021; Banner Thunderbird Medical Center records from September 30, 2020; Innovative Pain Solutions records from March 9, 2021; and Arizona Neurology and Sleep Center records from July 15, 2021. (Doc. 28-14 at 1–4). Dr. Shayya presents his opinions as answers to questions in the following format:

> 1. **To a reasonable degree of medical probability, was Ms. Rosales injured as a result of the September 29, 2020 motor vehicle collision? If so, what injuries did she sustain?** Yes, Ms. Rosales was injured as a result of the September 29, 2020 motor vehicle collision to a reasonable degree of medical probability. She suffered injuries of headaches, neck pain, and lumbar pain. She was ultimately diagnosed with headaches, cervical radiculopathy, and lumbar radiculopathy.
>
> 2. **To a reasonable degree of medical probability, what (if any) treatment noted in the attached records was related to the injuries sustained by Ms. Rosales in the September 29, 2020 motor vehicle collision?** The treatment that Ms. Rosales received from Innovative Pain Solutions, Banner Thunderbird Hospital, and Arizona Neurology and Sleep Center were related to the injuries sustained by Ms. Rosales, to a reasonable degree of medical probability.
>
> 3. **Was the treatment received by Ms. Rosales for injuries caused by the September 29, 2020 motor vehicle collision reasonable and customary?** Yes, the treatment Ms. Rosales received for injuries caused by the September 29, 2020 trauma was reasonable and customary.
>
> 4. **Was the cost of the treatment received by Ms. Rosales for injuries caused by the September 29, 2020 motor vehicle collision reasonable and customary?** Yes, the cost of the treatment received by Ms. Rosales to injuries related to the September 29, 2020 motor vehicle accident were reasonable and customary.

5. **Did Ms. Rosales aggravate any pre-existing condition as a result of the September 29, 2020 motor vehicle collision? If so, what was that condition?** No, Ms. Rosales did not aggravate any pre-existing conditions as a result of the September 29, 2020 motor vehicle collision.

6. **To a reasonable degree of medical probability, do you believe that Ms. Rosales will experience future discomfort and pain related to injuries she sustained as a result of the September 29, 2020 motor vehicle collision?** Based upon her positive response to physical therapy and headache medications, Ms. Rosales should not experience any future discomfort and pain related to the injuries sustained as a result of the September 29, 2020 motor vehicle accident.

7. **To a reasonable degree of medical probability, are injuries Ms. Rosales sustained in the September 29, 2020 motor vehicle collision permanent? If so, would you describe any permanent disability rating pursuant to relevant American Medical Association guidelines?** The only injury Ms. Rosale sustained as a result of the September 29, 2020 motor vehicle accident that may be permanent is her left upper facial paresis. Permanent disability rating, based upon the 6th edition of the American Medical Association guidelines, is between 1 and 3% whole person impairment.

8. **To a reasonable degree of medical probability, will Ms. Rosales require any additional or future medical treatment? If so, what treatment do you believe she will require?** Ms. Rosales will not require any additional or future medical treatment, to a reasonable degree of medical probability.

(*Id*. at 4–5 (emphasis in original)).

After this initial report, Dr. Shayya furnished a rebuttal report in which he reviewed an additional medical record from Plaintiff's June 13, 2019, visit with Dr. Habib Khan at the AZ Institute of Neurology and Polysomnography. (Doc. 28-15 at 1). His expert opinions did not change based on these new records. (*Id*. at 4–6).

Dr. Shayya was also deposed. (Doc. 28-16). Dr. Shayya was asked if he ever requested additional records from Plaintiffs. He answered that, if there were additional records, his "expectation would be that [she] would send them over for review." (*Id*. at 3). After this, Dr. Shayya admitted that he has never examined Plaintiff Rosales, spoken with her or knows what she looks like. (*Id*. at 4). Later in the deposition, Dr. Shayya was asked

if he had reviewed Plaintiff Rosales' January 18, 2019, records from HonorHealth John C. Lincoln Medical Center. He had not, and was surprised to learn why she had to visit this medical center:

> Q: On January 18, 2019, according to HonorHealth John C. Lincoln Medical Center, Ms. Rosales was brought to the emergency room by ambulance after a motor accident with probable ejection.
>
> **A: What date was that?**
>
> Q: January 18, 2019.
>
> **A: Okay.**
>
> Q: She was complaining of confusion and back pain. Her car was struck, rolled over, and then struck by a bus. She was found beside the car confused and did not remember the accident. She was hysterical and crying of pain, gasping for air. She was intubated. She had marked swelling of the left forehead and face. Her condition was guarded and critical. She was noted to have a large anterior hematoma on her forehead. Head, brain, cervical CT scans demonstrated a large left frontotemporal convexity, subgaleal hematoma without underlying fracture or intracranial hemorrhage, and an acute nondisplaced fracture involving the left C6 lamina.
>
> ***You didn't know that, did you?***
>
> **A: No.**
>
> Q: [Plaintiffs' Counsel] didn't give you those records, did she?
>
> **A: No.**

(*Id*. at 14–15) (emphasis added).

The Court finds that Dr. Shayya can testify to these opinions, except for his fifth opinion, because he was unaware of Plaintiff's previous accident in which she was likely ejected from her vehicle. That information would have been pertinent to his opinion about whether Plaintiff Rosales had a pre-existing condition.

Rule 702 dictates that an expert's opinion be "based on sufficient facts or data." Fed. R. Evid. 702(c). "A trial court should admit medical expert testimony if physicians would accept it as useful and reliable," but it need not be conclusive because "medical knowledge is often uncertain." *Primiano*, 598 F.3d at 565. The trial court "must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at

- 13 -

hand." *Id*. at 564 (internal citation and quotations omitted).

Expert testimony that "neglects to consider a hypothesis that might explain the clinical findings under consideration may [] be unreliable." *Clausen*, 339 F.3d at 1058. "A district court is justified in excluding evidence if an expert 'utterly fails . . . to offer an explanation for why the proffered alternative cause' was ruled out." *Id.* However, "[a] medical expert's opinion based upon differential diagnosis normally should not be excluded because the expert has failed to rule out every possible alternative cause of a plaintiff's illness." *Stanley*, 11 F. Supp. 3d at 1001 (quoting *Cooper v. Smith & Nephew, Inc*., 259 F.3d 194, 202 (4th Cir.2001)).

Generally, an expert witness is not required to "rule out every potential cause in order to satisfy *Daubert*, as long as the expert's testimony address[es] obvious alternative causes and provide[s] a reasonable explanation for dismissing specific alternate factors identified by the defendant." *Id.* (quoting *In re Fosamax Products Liab. Litig*., 647 F.Supp.2d 265, 278 (S.D.N.Y. 2009)). So, the argument that an expert did not adequately rule out additional factors is a credibility determination that goes to the weight, not the admissibility, of their opinions which should be addressed by cross-examination during trial—not exclusion. *See id*. (citations omitted); *see also Ferguson v. Riverside Sch. Dist. No. 416*, 2002 WL 34355958, at *9 (E.D. Wash. Feb. 6, 2002) ("[T]he defendants' contention that [the expert] improperly ignored or discounted alternative causes will be the proper subject of cross-examination, but does not make his testimony inadmissible.").

First, the Court finds that Dr. Shayya's medical opinions are based on sufficient facts and data. *See* Fed. R. Evid. 702(c). Dr. Shayya has reviewed a plethora of Plaintiff Rosales' records to support his opinions, including: SimonMed Imaging records from March 12, 2021; Banner Thunderbird Medical Center records from September 30, 2020; Innovative Pain Solutions records from March 9, 2021; and Arizona Neurology and Sleep Center records from July 15, 2021. (Doc. 28-14 at 1–4). He is also a board-certified neurologist. (Doc. 34 at 3). Based on his experience and review of Plaintiff Rosales' records, he was able to link the accident to her injuries. (*See* Doc. 28-14 at 4–5). For

instance, Dr. Shayya concluded that Plaintiff Rosales "was injured as a result of the September 29, 2020, motor vehicle collision to a reasonable degree of medical probability. She suffered injuries of headaches, neck pain, and lumbar pain. She was ultimately diagnosed with headaches, cervical radiculopathy, and lumbar radiculopathy." (*Id*. at 4). Because Dr. Shayya rigorously reviewed Plaintiff Rosales' records in this case, the Court finds that his opinions are based on sufficient facts and data and refuses to exclude him on these grounds. *See* Fed. R. Evid. 702(c).

Next, the Court finds that, because Dr. Shayya had insufficient information on the possible existence of a pre-existing condition, his testimony must be limited—but not excluded. Dr. Shayya failed to consider Plaintiff's 2019 car accident which resulted in "probable ejection." (Doc. 28-16 at 14–15). In fact, Dr. Shayya seemed surprised to learn of this accident and admitted that he did not know about it. (*See id*.) So, the Court will not allow Dr. Shayya to testify as to his fifth opinion: that Plaintiff Rosales "did not aggravate any pre-existing conditions as a result of the September 29, 2020, motor vehicle collision." (Doc. 28-14 at 5).

However, Dr. Shayya may testify to his other opinions regarding the accident and Plaintiff Rosales' injuries as he was not required to "rule out every potential cause in order to satisfy *Daubert*." *Stanley*, 11 F. Supp. 3d at 1001. Dr. Shayya, in his rebuttal report, reviewed additional medical records from Plaintiff's June 13, 2019, visit with Dr. Habib Khan at the AZ Institute of Neurology and Polysomnography. (Doc. 28-15 at 1). This record includes evidence that Plaintiff Rosales was experiencing ongoing headaches at least twice a week, associated with lightheadedness and vision loss. (*Id*.) This record also notes that she suffered a concussion because of a car accident in January of 2019—which is likely the same incident as the previous accident which occurred on January 18, 2019, that Defendant claims he failed to consider. (*Id*; Doc. 28-12 at 2). His remaining expert opinions did not change based on this review of Dr. Khan's records. (Doc. 28-15 at 4–6). So, Dr. Shayya was aware of Plaintiff Rosales' history of headaches and that she suffered a concussion from a previous accident. (*See id*.) Knowing this, he still attributes Plaintiff

Rosales' current injuries to the September 29, 2020, accident—not the 2019 accident. (*See id.*) Because Dr. Shayya was aware of Plaintiff Rosales' history of headaches as well as her concussion, the Court finds that his failure to rule out the 2019 accident is a credibility determination that goes to the weight, not the admissibility, of his opinions, which should be addressed by cross-examination during trial. *See Stanley*, 11 F. Supp. 3d at 1001.

Thus, the Court will allow Dr. Shayya to testify to most of his purported opinions, except for his fifth opinion: that Plaintiff Rosales "did not aggravate any pre-existing conditions as a result of the September 29, 2020, motor vehicle collision." (Doc. 28-15 at 5).

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Exclude Dr. Hirsch (Doc. 27) and Dr. Shayya (Doc. 28) are **GRANTED in part and DENIED in part** as set forth above.

Dated this 25th day of September, 2024.

Honorable Diane J. Humetewa
United States District Judge