**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Brandee Rosales,

             Plaintiff,

v.

Sarah Rollag, et al.,

             Defendants.

No. CV-22-01581-PHX-DJH

**ORDER**

This case arises from a rear-end collision which Plaintiff Brandee Rosales ("Plaintiff Rosales") alleges caused the premature birth of her daughter, A.T. ("Plaintiff A.T."), as well as other injuries (collectively, "Plaintiffs"). (Doc. 5-1 at ¶¶ 13–16). Plaintiffs and Defendant Sarah Rollag ("Defendant") have each filed Motions for Summary Judgment. (Docs. 29 & 30). These Motions are full briefed. (Docs. 39–42). Plaintiff Rosales seeks summary judgment on her claims for negligence and negligence *per se*, as well as Defendant's affirmative defense of comparative fault and the reasonableness of her medical procedures and expenses. (Doc. 30 at 11). Defendant, in turn, seeks partial summary judgment on the causation of Plaintiffs' following injuries: the alleged preterm premature rupture of Plaintiff Rosales' membranes; the premature birth of Plaintiff A.T.; Plaintiff Rosales' need to undergo a cesarean section; any alleged injuries sustained by Plaintiff A.T.; and Plaintiff Rosales' development of a pulmonary embolism. (Doc. 29 at 15). Defendant argues there is no evidence that the accident caused any of these injuries.

1    (Doc. 29 at 1).[1]   The Court denies both of these Motions for Summary Judgment as

2    explained below.

3    **I.      Background[2]**

4          Plaintiff Rosales alleges that she was parked in the center turn lane of 35th Avenue

5    in Phoenix, Arizona when she was rear ended by Defendant on September 29, 2020.

6    (Doc. 5-1 at ¶¶ 13–16).  Defendant states that she saw Plaintiffs' car in the left lane but

7    could not tell that it was stopped, as she saw no brake lights or turn signals.  (Doc. 39 at 2).

8    Defendant further states that, to avoid hitting Plaintiff's vehicle, she veered into the center

9    lane but still collided with Plaintiff's driver side bumper.  (*Id*.)

10          An Arizona Crash Report was issued on the day of the accident by Officer Josue

11    Murillo.  (Doc. 39-1).  The Crash Report states that Defendant's vehicle suffered damage

12    to the front passenger side and that Plaintiffs' vehicle suffered damage to the driver's side

13    rear.  (*Id*. at 3).  Plaintiff Rosales told Officer Murillo that she was in the continuous turn

14    lane when she was struck from behind.  (*Id*. at 5).  Defendant told Officer Murillo that

15    Plaintiff Rosales abruptly stopped near the turn lane but was still occupying the left lane of

16    travel.  (*Id*.)  Defendant stated that she tried to maneuver around Plaintiff's vehicle but hit

17    them from behind.  (*Id*.)  The Crash Report does not make a determination of fault.  (*Id*.)

18          Plaintiff Rosales was twenty weeks pregnant at the time of the collision, so as a

19    precaution, she sought medical care the next day.  (Doc. 43 at 1).  She reported head, neck,

20    and back pain; but testing showed no acute findings or placental abnormalities.  (Doc. 30-

21    5 at 3).  On October 6, 2020, Plaintiff Rosales again sought care as she experienced a large

22    leakage of fluids.  (Doc. 30 at 3; Doc. 29 at 2).  She was diagnosed with "suspect preterm

23    premature rupture of membranes" and discharged with instructions to rest.  (Doc. 40-7 at

24    1–2).

---

[1] Defendant has requested oral argument in this matter.  (Doc. 84).  The Court denies this request because the issues have been fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] The following facts are undisputed, unless stated otherwise.

On December 14, 2020, Plaintiff Rosales was admitted to Chandler Regional with gushing of vaginal fluid which was positive for ferning and pooling. (Doc. 39 at 5). While still admitted, her treating doctor at Chandler Regional, Dr. Paula McEachen, felt "digits" and thought Plaintiff A.T.'s entire hand was over her head. (Doc. 39-8 at 19). Attempts to get her to retract her arms were unsuccessful (*id*.), so, Plaintiff Rosales underwent a c-section and gave birth to A.T. on December 18, 2020. (Doc. 29 at 4; Doc. 40 at 4). Plaintiff A.T. was born eight weeks premature and required a four-week long stay in the neonatal intensive care unit ("NICU"). (Doc. 43 at 2). Plaintiff A.T. was born with "excoriations on feet and lower legs; most likely from in utero compression against the head and through cervix." (Doc. 40-7 at 14). Prior to the crash, Plaintiff Rosales underwent an obstetric ultrasound that revealed normal findings, including subjective normal amniotic fluid on August 27, 2020. (Doc. 30-4 at 1–2).

On January 15, 2021, Plaintiff Rosales returned to the ER at Chandler Regional due to shortness of breath and chest discomfort over the past day. (Doc. 27-3 at 1). She was diagnosed with a pulmonary embolism, Covid-19, and pneumonia. (*Id*. at 7). On March 9, 2021, Plaintiff Rosales went to Innovative Pain & Wellness reporting cervical, lumbar, and left hip pain, along with headaches. (Doc. 39-10 at 1). Subsequent imaging showed "foraminal bulging causing mild bilateral foraminal narrowing at L3-4 and L4-5; a 1.5-mm broad posterior disc herniation at L5-S1; and a 1.5-mm focal central protrusion at C5-6." (Doc. 39-11 at 1-2). Plaintiff Rosales was prescribed a physical therapy treatment regimen to treat her pain. (Doc. 39-10 at 5).

Plaintiffs allege that their injuries can be linked to the September 29, 2020, accident. (Doc. 5-1 at ¶ 24). Plaintiff Rosales also argues that, because of each of their injuries, Plaintiff incurred $157,142.27 and A.T. incurred $172,896.00 in medical expenses. (Doc. 33 at 5). Plaintiffs brought claims for negligence (Doc. 5-1 at ¶¶ 20–26) and negligence *per se* (*Id*. at ¶¶ 27–32) against Defendant.

To substantiate her claims for damages, Plaintiffs retained two expert witnesses: Dr. Nathan Hirsch and Dr. Luay Shayya. (Doc. 43 at 2). Dr. Hirsch is a board certified

OBGYN and was retained to "to review all of Plaintiffs' medical records and evaluate whether Ms. Rosales' premature rupture of the membranes, premature birth of her baby and resulting NICU stay were related to the collision." (Doc. 33 at 5). Based on this review, Dr. Hirsch concluded that the car accident caused Plaintiff's injuries and premature birth of A.T. (Doc. 27-12 at 2). Plaintiff also retained Dr. Shayya, a board-certified neurologist, to "render causation opinions regarding her alleged injuries." (Doc. 28 at 4). Dr. Shayya has reviewed Plaintiff's post-accident medical records and one pre-accident record and concluded that the medical care she received was related to the collision with Defendant. (*Id.*)

## II. Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id*. Courts do not weigh evidence to discern the truth of the matter; they only determine whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). This standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id*. at 250–51 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a

genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  The summary-judgment stage is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events." *Arguedas v. Carson*, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024) (citation omitted).  In fact, the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in [its] favor."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party.  *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

Ordinarily, summary judgment is not appropriate in negligence actions because "breach of the duty of reasonable care and proximate cause are fact questions for the jury." *Matthews v. Greyhound Lines, Inc.*, 882 F. Supp. 146, 148 (D. Ariz. 1995) (citing *Markowitz v. Arizona Parks Bd.*, 706 P.2d 364 (Ariz. 1985)).  Nevertheless, summary judgment is appropriate "where all reasonable people must draw the same conclusion." *Id.* (citing *Talbot v. Schroeder*, 475 P.2d 520 (Ariz. Ct. App. 1970)).

1    **III.    Plaintiffs' Motion for Summary Judgment**

2            Plaintiffs seek summary judgment on the issues of liability on their negligence and

3    negligence per se claims; as well as Defendant's affirmative defense of comparative fault

4    and the reasonableness of their medical procedures and expenses[3] and argue that expert

5    testimony is required to rebut the reasonableness of Plaintiffs' treatment and expenses.

6    (Doc. 30 at 11).   The Court will address each of Plaintiffs' arguments for summary

7    judgment in turn.

8            **A.    Negligence**

9            Plaintiffs first argue that they are entitled to summary judgment on the issue of

10   liability on their negligence claim because they have shown that their vehicle was struck

11   from behind by Defendant.   (Doc. 30 at 6 (citing *Bates v. Bar*, 525 P.2d 490 (Colo. App.

12   1974)).    Plaintiffs essentially argue that, because they were rear-ended, they are

13   automatically entitled to judgment on this claim.   (*Id.*)   Plaintiffs also argue that they had

14   the right to expect that other motorists would obey the law, therefore, Plaintiff Rosales had

15   the right to expect Defendant to control the speed of her vehicle as necessary to avoid

16   colliding with her.   (Doc. 41 at 3).

17           Federal courts sitting in diversity apply the substantive law of the state in which

18   they sit.   *See Clark v. Eddie Bauer LLC*, 30 F.4th 1151, 1154 (9th Cir. 2022) (citing *Albano*

19   *v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).   In Arizona, to establish a

20   claim for negligence, a plaintiff must prove four elements: "(1) a duty requiring the

21   defendant to conform to a certain standard of care; (2) a breach by the defendant of that

22   standard; (3) a causal connection between the defendant's conduct and the resulting injury;

23   and (4) actual damages."   *Diaz v. Phoenix Lubrication Serv., Inc*., 230 P.3d 718, 721

24   (Ariz. Ct. App. 2010) (quoting *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007)).

---

25   [3] Plaintiffs' argument that they have satisfied the foundational requirements for their
26   medical bills and the causation of treatment has been addressed and resolved by the Court's
     September 24, 2024, Order.  (Doc. 43).  Therein, the Court held that Dr. Hirsch could
27   testify to the reasonableness of Plaintiff Rosales' treatment and expenses, but not Plaintiff
     A.T., because he did not review records specific to her.  (*Id.* at 9–10).  To the extent that
28   Plaintiffs seek to pre-admit this evidence prior to trial, the Court declines to do so as
     Plaintiffs must still establish a causal connection between the bills and the accident—and
     they have yet to do so.  *See Larsen v. Decker*, 995 P.2d 281, 287 (Ariz. Ct. App. 2000).

It is unlawful in Arizona to "follow another vehicle more closely than is reasonable and prudent."  A.R.S. § 28-730(A).  However, drivers "shall not turn a vehicle at an intersection unless the vehicle is in proper position on the roadway."  A.R.S. § 28-754(A).  As well, drivers are required to use "an appropriate signal" when turning.  *Id*.  Finally, drivers must not "stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal . . . to the driver of any vehicle ***immediately to the rear*** when there is opportunity to give the signal."  *Id*. at 754(C) (emphasis added).

Liability for the accident is a factual issue which must go to the jury.  Plaintiff Rosales alleges that she was parked in the center turn lane on 35th Avenue when she was rear ended by Defendant, who failed to control the speed of her vehicle.  (Doc. 30 at 1–2).  She also states that she had her blinker on at the time of the accident.  (*Id*. at 2).  Defendant disagrees and testified  that Plaintiff Rosales's car was in the left lane, not the center turning lane, and that she could not tell that it was stopped as she saw no brake lights or turn signals.  (Doc. 39 at 2).  Defendant asserts that she did not fail to control her car but tried to avoid hitting Plaintiff Rosales's vehicle by veering into the center lane; she nonetheless still collided with Plaintiff's driver side bumper.  (*Id*.)

As illustrated, the parties hotly contest the issue of liability, a determination that will largely turn on whether the factfinder believes Plaintiff Rosales or Defendant.  There are also genuine issues of material fact which prevent judgment as a matter of law in Plaintiffs' favor.  *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23.  Indeed, Plaintiff Rosales says that Defendant may have been following her too closely when she rear-ended them, contrary to Section 730.  She states in her deposition that she was waiting in the turn lane to turn into an AutoZone parking lot when she was rear-ended.  (Doc. 30-2 at 1).  She also states that she turned her blinker on.  (*Id*. at 2).  This evidence could establish that Defendant was following Plaintiffs' vehicle more closely than is reasonable and prudent.  *See* A.R.S. § 28-730(A).  However, Defendant has produced contradictory evidence in her own favor.

Defendant stated during her deposition that she saw Plaintiffs' vehicle "a distance

away" and that she could not tell whether it was stopped. (Doc. 39-3 at 3). She also states that Plaintiffs' vehicle was directly in front of her, so she had to veer to the left once she realized it was not moving. (*Id.*) Defendant stated that she was not traveling directly behind Plaintiffs and that she was going about forty-five miles per hour. (*Id*. at 4–5). She stated that the road they were both on had a speed-limit of forty-five miles per hour and that there were cars to her right. (*Id*. at 5). Defendant also stated that she did not see any brake lights or turn signals on Plaintiffs' vehicle prior to the accident. (*Id*. at 7). This evidence could show that Plaintiff Rosales was not in a proper position on the roadway to turn and she failed to use a turn signal. A.R.S. § 28-754(A), (C).

Reasonable minds could differ as to the import of this evidence, so, Plaintiffs are not entitled to summary judgment. *See Anderson*, 477 U.S. at 250–51. On one hand, there is evidence that Defendant violated Section 730 by following Plaintiffs too closely. (Doc. 30-2 at 1–2). On the other, there is evidence that Plaintiff Rosales herself violated Section 754 by turning while still in a lane of travel without a proper signal. (Doc. 39-3 at 3–7). Furthermore, the Arizona Crash Report prepared on the day of the accident did not make any fault determinations—but found that there was only damage to part of Plaintiffs' and Defendant's bumpers. (Doc. 39-1 at 5). To make a finding for a party on the issue of liability as to negligence, the Court would have to make credibility determinations or weigh conflicting evidence—which it cannot do at the summary judgment stage. *See T.W. Electric Service*, 809 F.2d at 630–31. Thus, the Court will not grant summary judgment as to this issue.

### B.   Negligence *Per Se*

Plaintiffs next argues that the Court should grant summary judgment in their favor as to liability since Defendant's conduct constitutes negligence *per se*. (Doc. 30 at 6). This is, in essence, an argument that Defendant owed Plaintiffs' a duty and she breached that duty.

Negligence *per se* "is not a cause of action separate from common law negligence. It is a doctrine under which a plaintiff can establish the duty and breach elements of a

negligence claim based on a violation of a statute that supplies the relevant duty of care." *Craten v. Foster Poultry Farms Inc*., 305 F. Supp. 3d 1051, 1054 n.2 (D. Ariz. 2018) (citation omitted). "A person who violates a statute enacted for the protection and safety of the public is guilty of negligence *per se*." *Alaface v. Nat'l Invest. Co.*, 892 P.2d 1375, 1385 (Ariz. Ct. App. 1994) (citations omitted). "To provide the basis for a negligence *per se* claim, a statute 'must proscribe certain or specific acts . . . Therefore, if a statute defines only a general standard of care . . . negligence *per se* is inappropriate." *Ibarra v. Gastelum*, 471 P.3d 1028, 1030 (Ariz. Ct. App. 2020) (citation omitted).

"Arizona's traffic code is a safety regulation that can [serve as] the basis for negligence *per se*." *Jensen v. EXC, Inc*., 2019 WL 588034, at *3 (D. Ariz. Feb. 13, 2019) (citation omitted). "However, a finding of negligence *per se* does not relieve the plaintiff from its burden of proving causation and damages." *Id*. (citing *City of Phoenix v. Mullen*, 174 P.2d 422, 424 (Ariz. 1946) (stating that "[w]here the driver fails to comply with the positive directions of the statute, the question of whether such statutory negligence in any way contributed to the accident and injury of the plaintiff was one for the jury" (internal quotation marks and citation omitted)).

Plaintiffs allege a negligence *per se* claim based on Defendants' purported violations of Arizona Revised Statute Sections 28-730(A) and 28-701(A). Section 28-730(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent and shall have due regard for the speed of the vehicles on, the traffic on and the condition of the highway." A.R.S. § 28-730(A). Section 28-701(A) provides that "[a] person shall control the speed of a vehicle as necessary to avoid colliding with any object, person, vehicle or other conveyance on, entering or adjacent to the highway in compliance with legal requirements and the duty of all persons to exercise reasonable care for the protection of others." A.R.S. § 28-701(A).

Section 28-730(A) is sufficiently specific such that a violation of that statute constitutes negligence *per se*. *Lee v. State Farm Mut. Auto. Ins. Co*., 2006 WL 2917348, at *2 (D. Ariz. Oct. 10, 2006) (citing *Newman v. Piazza*, 433 P.2d 47, 51 (Ariz. Ct. App.

1967)).  However, as Defendant argues, Section 28-701 is not.  *See Ruiz v. Faulkner*, 470 P.2d 500, 506 (Ariz. Ct. App. 1970) ("a person driving in excess of the established speed limit on Arizona roads is not negligent *per se* but such fact does constitute prima facie evidence that such excess speed is not reasonable and prudent.") (citation omitted); *Deering v. Carter*, 376 P.2d 857, 860 (Ariz. 1962) ("When, as here, the statute does not proscribe certain or specific acts, but defines a standard of conduct against which the jury must measure the party's conduct, a finding that the party violated the statutory standard is a finding that the party was *negligent*."); *see also id*. at 859 ("The question of what is an 'appropriate reduced speed' under any set of circumstances is a question for the jury."). So, Plaintiffs' argument that it is entitled to summary judgement as to liability under Section 28-701(A) is precluded as a matter of law.

As for their Section 28-730(A) argument that Defendant was following them too closely, Plaintiffs have also failed to demonstrate entitlement to summary judgment under that statute based on  their negligence *per se* claim.  It is undisputed that a collision occurred, but the cause and liability of this collision is heavily disputed.  (*See* Doc. 30 at 1–2; Doc. 39 at 14).  As stated in the previous section, Plaintiffs have produced evidence that the fact finder could use to infer that Defendant violated Section 730 by following Plaintiffs too closely.  (Doc. 30-2 at 1–2).  However, Defendant has also set forth evidence that rebuts this inference.  (Doc. 39-3 at 3–7).

For example, Defendant testified that she was not following immediately behind Plaintiffs, that she saw Plaintiffs' vehicle "a distance away" and that she could not tell whether it was stopped.  (*Id*.)  She also stated that Plaintiff was attempting to turn from the left lane of travel without using a turn signal.  (*Id*. at 7).  Defendant has also produced the Arizona Crash Report, which, viewed in a light most favorable to Defendant, provides an inference that Plaintiff was not fully in the turn lane at the time of the accident since there was only damage to her front passenger bumper and Plaintiffs' rear driver-side bumper. (Doc. 39-1 at 3).  As demonstrated, to make a finding one way or another on Defendant's purported violation of Section 28-730(A), the Court would have to make credibility

determinations or weigh conflicting evidence—which it cannot do at the summary judgment stage.  *See T.W. Electric Service*, 809 F.2d at 630–31.  Plaintiffs' evidence, viewed in a light most favorable to Defendant, constitutes prima facie evidence of a breach of duty—not negligence *per se*.  *See generally Ruiz*, 470 P.2d at 506 (stating that evidence of the defendant's failure to control their speed constitutes "prima facie evidence that such excess speed is not reasonable and prudent"—but does not establish negligence *per se*).  Because Plaintiffs have not affirmatively demonstrated that a reasonable trier of fact could *only* find that Defendant was following them too closely in violation of Section 28-730(A), they are not entitled to summary judgment on their negligence *per se* claim.  *Soremekun*, 509 F.3d at 984.

### C.   Comparative Fault

Next, Plaintiff argues that Defendant has failed to advance any evidence of comparative fault on the part of Plaintiff Rosales.  (Doc. 30 at 9).  Defendant disagrees and says that it has set forth evidence, at the very least, to establish genuine issues of material fact as to its comparative fault defense.  (Doc. 39 at 18).  Specifically, it argues that there is evidence that Plaintiff Rosales failed to use her turn signal, in violation of A.R.S. § 28-754, and that she failed to drive within a single lane, contrary to A.R.S. § 28-729.  (*Id.*)

In the parties Joint Rule 26(f) Case Management Report, Defendant raises the affirmative defense of comparative fault under  A.R.S. § 12-2506.  (Doc. 12 at 2).  Under Arizona's comparative fault system, a defendant is liable "only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault." A.R.S. § 12-2506(A).  Because an allegation of comparative fault is an affirmative defense, the defendant must prove that the plaintiff or a non-party are "actually at fault."  *See Ryan v. San Francisco Peaks Trucking Co*., 262 P.3d 863, 869 (Ariz. Ct. App. 2011) (citation omitted).  To do this, a defendant asserting a comparative fault affirmative defense must prove the four negligence elements: (1) a duty; (2) a breach of that duty; (3) a causal connection between the actors conduct and the resulting injury; and (4) actual damages. *See Diaz*, 230 P.3d at 721.

- 11 -

Plaintiff Rosales, like all Arizona drivers, had a duty to drive with reasonable care to not subject other motorists to unreasonable risks of harm. *Rudolph v. Arizona B.A.S.S. Fed'n*, 898 P.2d 1000, 1003 (Ariz. Ct. App. 1995). Section 754 provides that drivers "shall not turn a vehicle at an intersection unless the vehicle is in proper position on the roadway." A.R.S. § 28-754(A). This Section "does not require drivers to signal every time they make a turn." *State v. Starr*, 213 P.3d 214, 219 (Ariz. Ct. App. 2009). For a Section 28-754 violation to occur, "there must have been traffic, and there must have been some possibility that the traffic would be 'affected by the movement' of the [driver] when it made its . . . turn." *Id*. (quoting *United States v. Mariscal*, 285 F.3d 1127, 1129 (9th Cir. 2002)). In these circumstances, a driver who "makes an unsignaled turn or move deprives other drivers of a warning that a change of course is about to take place." *Id*. at 221.

Here, Defendant has some evidence that could convince a trier of fact to accept her version of events, so, summary judgment is not appropriate. *Arguedas*, 2024 WL 253644, at *2. Defendant testified that she saw Plaintiffs' vehicle "a distance away" and that she could not tell whether it was stopped. (Doc. 39-3 at 3). She also stated that Plaintiffs' vehicle was directly in front of her, so she had to veer to the left once she realized it was not moving. (*Id*.) Defendant stated that she was not traveling directly behind Plaintiffs. (*Id*. at 4–5). Defendant also stated that she did not see any brake lights or turn signals on Plaintiffs' vehicle prior to the accident. (*Id*. at 7). Defendant has also furnished the Crash Report, which establishes a dispute of facts as to fault since only Defendant's passenger-side and Plaintiff's driver-side bumpers were damaged. (Doc. 39-1 at 5). Viewing the facts in a light most favorable to Defendant, had Plaintiff Rosales used her turn signal, it may have influenced Defendant to slow down or proceed with caution. *See Starr*, 213 P.3d at 219 ("it is enough that the move may influence the factors a driver would consider in order to drive safely."). These facts, set forth by Defendant, demonstrate that there is a genuine issue for trial, so, the Court cannot enter judgment in Plaintiffs' favor on Defendant's comparative fault defense. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).

/ / /

1

      **D.      Expert Testimony**

2              Plaintiffs lastly argue that Defendant has offered no admissible evidence to rebut

3 their expert testimony that their medical treatment and expenses were reasonable.

4 (Doc. 30 at 10).  Plaintiffs note that expert medical testimony is needed to combat whether

5 a particular medical treatment is necessary.  (*Id.* (citing *Patches v. Indus. Comm'n of Ariz.*,

6 204 P.3d 437, 439 (Ariz. Ct. App. 2009))).  Plaintiff argues that this lack of rebuttal expert

7 evidence requires the Court to enter judgment in its favor on the reasonableness of their

8 treatment and expenses.  (*Id.* at 11).  Not so.

9              Defendant previously filed two motions seeking to exclude the expert opinions of

10 Plaintiffs' experts: Dr. Hirsch and Dr Shayya.  (Docs. 27 & 28).  Defendant argued that

11 Dr. Hirsch could not opine on the reasonableness of Plaintiffs' medical expenses because

12 he is not licensed to practice in Arizona and did not actually review any of Plaintiff A.T.'s

13 records.   (Doc. 27 at 14–15).   She did not argue whether Dr. Shayya could testify to

14 Plaintiff Rosales treatment and expenses.  (Doc. 28).

15              Upon review, the Court concluded that Plaintiffs could not proffer Dr. Hirsch for

16 the reasonableness of A.T.'s treatment or costs because he did not review any of her

17 records, such as records from her stay in the NICU.  (Doc. 43 at 10).  The Court also

18 concluded that Dr. Hirsch could testify about the reasonableness of Plaintiff Rosales'

19 treatment and expenses, but that this evidence was "ripe for vigorous cross-examination."

20 (*Id.*)  The Court did not exclude these experts because Defendant's arguments went to the

21 weight of their opinions, not their admissibility.  (*Id.* at 8, 16).  In finding so, the Court

22 noted that it would allow Defendant to test the credibility of these opinions as it is the jury,

23 not the Court, who judges credibility.  (Doc. 43 at 8 (citing *Primiono v. Cook*, 598 F.3d

24 558, 564 (9th Cir. 2010)).

25              Plaintiff Rosales has established the "minimal foundation" to prevent exclusion of

26 this evidence, but at trial, she must still establish a causal connection between her medical

27 bills and Defendant's alleged negligent conduct.  *See id*; *Longoria v. Kodiak Concepts*

28 *LLC*, 2021 WL 1100373, at \*11 (D. Ariz. Mar. 23, 2021) ("The proponent of expert

testimony need only lay a 'minimal foundation' of 'knowledge, skill, experience, training, or education' in the topic at hand.") (citation omitted).  Moreover, Plaintiff A.T. has not established the minimal foundation necessary to prevent exclusion, and the Court has limited Dr. Hirsch from testifying to her treatment or expenses.  (Doc. 43 at 9–10).

Plaintiffs' reliance on *Patches* is also misplaced.  The Arizona Court of Appeals noted there that "[w]hether a particular type of treatment is reasonably required is a medical question and requires expert medical testimony." *Patches*, 204 P.3d at 439.  However, *Patches* does not stand for the proposition that Defendant must also provide medical expert testimony to rebut Plaintiffs' experts in a car crash case. *See id.*  To admit their medical bills and expert testimony regarding the bills, Plaintiffs must still establish: "(1) a causal connection between the medical bills and [the defendant's] negligent conduct; (2) the treatment was necessary; and (3) the expenses were reasonable." *Fadely v. Encompass Health Valley of the Sun Rehab. Hosp.*, 515 P.3d 701, 709 (Ariz. Ct. App. 2022).  Plaintiffs have not affirmatively established causation, so, the Court cannot enter judgment in its favor on the reasonableness of their treatment and expenses at this stage. *See Soremekun*, 509 F.3d at 984.  Furthermore, Plaintiffs' argument cuts against a basic and well-established proposition of law: that a plaintiff bears the burden of proving its claims. *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018) ("It is one of the most basic propositions of law . . . that the plaintiff bears the burden of proving his case, including the amount of damages.") (citation omitted).

As stated in the Court's prior Order, it is the jury, not the Court, who makes credibility determinations and weighs conflicting evidence. *See T.W. Electric Service*, 809 F.2d at 630–31.  The Court's Prior Order moots Plaintiffs' argument because it has previously decided that Defendant will be able to attack the credibility of Dr. Hirsch and Dr. Shayya.  (Doc. 43 at 8, 16).  Furthermore, Defendant does not need its own experts to rebut Dr. Hirsch and Dr. Shayya's opinions.  Instead, they can rely on "the safeguards of the adversary system—vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]" *Wendell v. GlaxoSmithKline LLC*, 858 F.3d

1227, 1237 (9th Cir. 2017).

## IV.    Defendant's Motion for Summary Judgment

Defendant seeks partial summary judgment on Plaintiffs' following: (1) the alleged preterm premature rupture of Plaintiff Rosales' membranes; (2) the premature birth of Plaintiff A.T.; (3) Plaintiff Rosales' need to undergo a cesarean section; (4) any alleged injuries sustained by Plaintiff A.T.; and (5) Plaintiff Rosales' development of a pulmonary embolism. (Doc. 29 at 15). Defendant argues that it is entitled to judgment here because there is no evidence that the September 29, 2020, accident caused these alleged injuries or treatment. (*Id*. at 1).

To prevail on their claims for negligence, Plaintiffs must prove four elements: (1) duty; (2) a breach of that duty; (3) causation; and (4) damages. *See Diaz*, 230 P.3d at 721. For their negligence *per se* claims, A.R.S. § 28-730(A) establishes the duty and breach elements Plaintiffs must satisfy, *see Craten*, 305 F. Supp. 3d at 1054 n.2; but they must still prove causation and damages. *Jensen*, 2019 WL 588034, at *3. Indeed, "[t]o establish fault, a plaintiff must prove that the defendant's negligence proximately caused the plaintiff's injury." *Stephens v. Bashas' Inc*., 924 P.2d 117, 121 (Ariz. Ct. App. 1996). Under Arizona law, the proximate cause of an injury "is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1137 (D. Ariz. 2007) (citing *McDowell v. Davis*, 448 P.2d 869, 871 (Ariz. 1968)). A plaintiff proves proximate cause by demonstrating "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred." *Barrett v. Harris*,  86 P.3d 954, 958 (Ariz. Ct. App. 2004) Proximate cause "is usually a factual decision that should be decided at trial." *Christensen v. Georgia-Pac. Corp*., 279 F.3d 807, 815 (9th Cir. 2002).

Reasonable minds could differ as to the import of Plaintiffs' causation evidence, so, summary judgment is not proper. *Anderson*, 477 U.S. at 250.

First, Defendant argues that Plaintiff Rosales has failed to produce admissible evidence that the accident caused the preterm premature rupture of her membranes. (Doc. 29 at 11).  The Court disagrees.  Records from Plaintiff Rosales' October 20, 2020, visit to Chandler Regional Medical Center indicate that she was diagnosed with preterm premature rupture of membranes.  (Doc. 40-7 at 1–2).  In his expert report, Dr. Hirsch concluded that the accident "caused the cascade of events, the preterm premature rupture of membranes."  (Doc. 43 at 5).  The Court previously found that Dr. Hirsch could testify to this opinion under Rule 702.  (*Id*. at 8).  Dr. Hirsch also testified during his deposition that "with reasonable certainty, the accident caused [Plaintiff Rosales] to have a large amount of fluid leak enough that it caused the wetting the seat of her car, and that it was precipitated by the car accident. The fact that [the membranes] sealed over still was an incident that occurred that set up the events that followed."  (Doc. 40-11 at 14).  Plaintiff Rosales medical records and Dr. Hirsch's opinions derived from these records demonstrate that a jury could reasonably find that the accident caused her preterm premature rupture of membranes, so, summary judgment is not appropriate as to this issue.  *See In re Oracle Corp. Sec. Litig*., 627 F.3d at 387.

Next, Defendant argues that Plaintiffs have failed to provide evidence that the premature birth of Plaintiff A.T., or Plaintiff Rosales's need for a c-section were caused by the accident.  (Doc. 29 at 12).  Defendant does not dispute that Plaintiff A.T. was born premature or that Plaintiff Rosales had to have a c-section.  (*Id*. at 4, 6).  She only disputes that these incidents were not caused by the accident.  (*Id*. at 12).  While Plaintiff Rosales was at Chandler Regional Medical Center, treating doctors thought that A.T.'s hand was over her head and Plaintiff Rosales' amniotic fluid was severely low, so, she was given a c-section.  (*Id*.)  It turned out to be Plaintiff A.T.'s foot that was above her head, not her hand.  (Doc. 40-11 at 17).  Dr. Hirsch stated during his deposition that this was likely caused by the decrease of amniotic fluid.  (*Id*.)  He also stated that "[t]he car accident contributed to the early rupture of membranes of which was a leak which set up milieu of changes that caused the premature birth of the baby after the rupture of membranes at 30

weeks and a few days, and also contributed to [Plaintiff Rosales'] bilateral pulmonary emboli." (*Id*. at 13).  Again, Dr. Hirsch states in his expert report that "[w]ith reasonable certainty the auto accident trauma caused . . . [the] premature birth of [A.T.]" (Doc. 43 at 5).  He based this opinion on several of Plaintiff Rosales' medical records. (*Id*.)  The Court also found that Dr. Hirsch could testify to this opinion under Rule 702.  (*Id*. at 8).  Dr. Hirsch has essentially opined that the premature birth of Plaintiff A.T. and Plaintiff Rosales' need for a c-section are a natural and continuous sequence of events stemming from the crash, without which the injuries would not have occurred.  *See Barrett*, 86 P.3d at 958.  So, the proximate cause of these injuries should be decided at trial, not upon summary judgment. *Christensen*, 279 F.3d at 815.

Defendant next argues that Plaintiffs have not provided evidence that the injuries to A.T. sustained while she was in the womb or her stay in the NICU were caused by the accident. (Doc. 29 at 14).  Plaintiff Rosales' records indicate that Plaintiff A.T. was born with "excoriations on feet and lower legs; most likely from in utero compression against the head and through cervix." (Doc. 40-7 at 14).  As a result of her premature birth, Plaintiff A.T. required a four-week long stay in the NICU.  (Doc. 43 at 2).  Prior to the crash, Plaintiff Rosales underwent an obstetric ultrasound that revealed normal findings, including subjective normal amniotic fluid on August 27, 2020. (Doc. 30-4 at 1–2).  Dr. Hirsch has opined that the car accident caused the premature birth of Plaintiff A.T. (Doc. 27-12 at 2).  The Court recently concluded that it would limit Dr. Hirsch from testifying to the reasonableness of A.T.'s treatment or costs "without more." (Doc. 43 at 10).  Plaintiffs' may still be able to flush this evidence out from Dr, Hirsch at trial.  The above evidence establishes that Plaintiffs' have, at the very least, set forth evidence that demonstrates genuine disputes of material fact exist as to the causation of Plaintiff A.T.'s injuries.  *See Celotex*, 477 U.S. at 322–23.  So, the Court cannot enter judgment as a matter of law in Defendant's favor on the causation of her injuries.  *See id*.

Lastly, Defendant argues that Plaintiffs have failed to provide evidence that the accident caused Plaintiff Rosales' to develop a pulmonary embolism. (Doc. 29 at 14).  On

January 15, 2021, Plaintiff returned to the ER at Chandler Regional after giving birth due to shortness of breath and chest discomfort.  (Doc. 27-3 at 1).  She was diagnosed with a pulmonary embolism, which is a blood clot in the lungs.  (*Id*. at 7).  Again, Dr. Hirsch stated at his deposition that "[t]he car accident contributed . . . to [Plaintiff Rosales'] bilateral pulmonary emboli" (Doc. 40-11 at 13), and the Court has found that Dr. Hirsch can testify to this opinion.  (Doc. 43 at 8).  Viewing this evidence in a light most favorable to Plaintiff, the Court finds that reasonable minds could find for her as to the causation of her pulmonary embolism, so, summary judgment is not appropriate.  *Matthews*, 882 F. Supp. at 148.

In sum, Plaintiff has set forth evidence that could convince a trier of fact to accept her version of events, so, the Court will not grant Defendant summary judgment as to the causation of Plaintiffs' injuries.  *See Arguedas*, 2024 WL 253644, at *2.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 30) and Defendant's Partial Motion for Summary Judgment (Doc. 29) are **DENIED**.

**IT IS FINALLY ORDERED** that considering Plaintiffs' remaining claims, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 14 at ¶ 10) regarding notice of readiness for pretrial conference.  Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 27th day of September, 2024.

Honorable Diane J. Humetewa
United States District Judge