**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Brandee Rosales,

           Plaintiff,

v.

Sarah Rollag,

           Defendant.

No. CV-22-01581-PHX-DJH

**ORDER**

Before the Court are fifteen Motions in Limine: six motions filed by Defendant Sarah Rollag ("Defendant") (Docs. 47–52) and nine motions filed by Plaintiffs Brandee Rosales (Plaintiff Rosales") and Plaintiff Rosales' minor daughter, A.T. ("Plaintiff A.T.") (collectively, "Plaintiffs"). (Docs. 57–64; 65). Each party has filed Responses in Opposition to the other party's Motions, which the Court has reviewed. (Docs. 67–81). The Court will address each Motion in turn.

## I.    Background

This case arises from a rear-end collision which Plaintiff Rosales alleges caused her injuries and the premature birth of Plaintiff A.T. and injuries. (Doc. 5-1 at ¶¶ 13–16). Plaintiffs allege on September 29, 2020, Plaintiff Rosales was rear ended by Defendant, who failed to control her speed. (*Id.*) Defendant states that she saw Plaintiffs' car in the left lane but could not tell that it was stopped, as she saw no brake lights or turn signals. (Doc. 44 at 2 (the Court's Summary Judgment Order)). Plaintiff Rosales was twenty weeks pregnant at the time of the collision, so as a precaution, she sought medical care the

next day.  (Doc. 43 at 1–2 (the Court's *Daubert* Order)).  She was diagnosed with headache, neck and lumbar sprain; but was not shown to have any placental abnormalities.  (*Id.* at 2).  On October 6, 2020, Plaintiff Rosales again sought care as she experienced a large leakage of fluids which soaked the seat of her vehicle.  (*Id.*)  She was diagnosed with "suspect preterm premature rupture of membranes" and discharged with instructions to rest.  (*Id.*)

On December 14, 2020, Plaintiff Rosales was admitted to Chandler Regional with various conditions related to her pregnancy.  (Doc. 44 at 3).  While still admitted, due to fetus complications, her treating doctor at Chandler Regional, Dr. Paula McEachen performed a c-section and A.T. was born on December 18, 2020.  (*Id.*)  A.T. was born eight weeks premature and required a four-week long stay in the neonatal intensive care unit ("NICU").  (*Id.*)

On January 15, 2021, Plaintiff Rosales returned to the ER at Chandler Regional due to shortness of breath and chest discomfort over the past day.  (Doc. 44 at 3).  She was diagnosed with a pulmonary embolism, Covid-19, and pneumonia.  (*Id.*)  On March 9, 2021, Plaintiff Rosales went to Innovative Pain & Wellness reporting cervical, lumbar, and left hip pain, along with headaches.  (*Id.*)  Plaintiff was prescribed a physical therapy treatment regimen to treat her pain.  (*Id.*)

Plaintiffs filed a Complaint alleging Arizona State Law Negligence and Negligence *Per Se* claims against Defendant.  (Doc. 5-1).  Plaintiffs allege their injuries can be linked to the crash.  (Doc. 5-1 at ¶ 24).  Plaintiffs argue that, because of each of their injuries, Plaintiff Rosales incurred $157,142.27 in medical expenses and Plaintiff A.T. incurred $172,896.00 in medical expenses.  (Doc. 43 at 2).  Plaintiffs' Complaint seeks special damages, general and compensatory damages, as well as property damages, lost wages and earnings.  (Doc. 5-1; ¶¶ A-E).

Defendant raises the affirmative defense of comparative fault under A.R.S. § 12-2506, asserting that Plaintiff Rosales was in the left lane, not the center turning lane, and she had no brake or turn signals on.  Defendant also alleges that Plaintiff Rosales had a duty to mitigate her damages.  (Doc. 6 at 4).

## II.    Legal Standards Governing Plaintiff's Claims

In Arizona, to establish a claim for negligence, a plaintiff must prove four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Diaz v. Phoenix Lubrication Serv., Inc*., 230 P.3d 718, 721 (Ariz. Ct. App. 2010) (quoting *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007)).  Plaintiff's negligence *per se* claim is alleged under A.R.S. § 28-730(A) and 28-701(A) which prohibit a driver from following more closely than is reasonable and prudent, and controlling one's speed, respectively.

Under Arizona's comparative fault system, a defendant is liable "only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault." A.R.S. § 12-2506(A).  Because an allegation of comparative fault is an affirmative defense, the defendant must prove that the plaintiff or a non-party are "actually at fault."  *See Ryan v. San Francisco Peaks Trucking Co*., 262 P.3d 863, 869 (Ariz. Ct. App. 2011) (citation omitted).  To do this, a defendant asserting a comparative fault affirmative defense must prove the four negligence elements: (1) a duty; (2) a breach of that duty; (3) a causal connection between the actors conduct and the resulting injury; and (4) actual damages.  *See Diaz*, 230 P.3d at 721.

## III.    Motions in Lime – Legal Standards

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984).  Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted).  Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored.  *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Motions in limine are "entirely within the discretion of the Court." *Jaynes Corp. v. American Safety Indem. Co.*,

2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42). Moreover, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has pass." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001).

Motions in limine are "provisional." *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in part on other grounds,* 613 F. App'x 610 (9th Cir. 2015).  The Court issues its rulings on motions in limine based on the record currently before it.  Therefore, rulings on such motions "are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial." *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner))). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

## A.    Burden of Proof

Motions to exclude evidence require the party seeking exclusion to inform the Court of the evidence's substance with specificity.  *See* Fed.R.Evid. 103(a)(2); *United States v. Bradford*, 905 F.3d 497, 505  (7th Cir. 2018)(finding a motion in limine did not satisfy Rule 103(a)'s specificity requirement by failing to identify the specific evidence or explain its admissibility).  The party offering the evidence and testimony at trial bears the burden of proof that it is relevant under Rule 401 and not prejudicial under Rule 403.

Federal Rule of Evidence 401[1] provides that "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Under Rule 402,

---

[1] Except where otherwise noted, all "Rule" references are to the Federal Rules of Evidence.

relevant evidence is admissible unless otherwise provided.  Fed. R. Evid. 402.  However, all relevant evidence is subject to the balancing test set forth by Rule 403.  That is, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### B.    The Court's Orders & Procedures

The Court's Rule 16 Scheduling Order was issued on October 31, 2022 (Doc. 14).  In the Order, the Court states "Disclosure under Rule 26(a)(2)(A) must include the ***identities of treating physicians*** and other witnesses who have not been specially employed to provide expert testimony but who will provide testimony under Federal Rules of Evidence 702, 703, or 705. A Rule 26(a)(2)(B) report is required for any opinion of such witnesses that was not developed in the course of their treatment or other factual involvement in this case."  (Doc. 14 at 3) (emphasis added).  The Order set September 15, 2023 as the fact discovery deadline.  On agreement by the parties, the Court extended the fact discovery deadline to November 15, 2023.

Relative to some of the parties motions, the Rule 16 Scheduling Order also states "Since this Court effectively requires all Rule 26(a)(3) Pretrial Disclosures to be contained in the joint Proposed Final Pretrial Order, this Order contemplates that all exhibits and witnesses that may be offered at trial will have been disclosed before the close of discovery as established by this Order. This Order therefore supersedes the "thirty-day before trial" disclosure deadline contained in that Rule. Therefore (1) failure to have timely supplemented a Rule 26(a) disclosure, (2) failure to have timely supplemented responses to discovery requests, or (3) attempting to include any witnesses or exhibits in the joint Proposed Final Pretrial Order that were not previously disclosed prior to the discovery deadline set forth in this Order, may result in the exclusion of such evidence at trial or the imposition of other sanctions." (*Id*. at 4).  Thus, the parties were made fully aware of their disclosure obligations and the consequences of not meeting the requirements of disclosure.

**IV.    Discussion[2]**

Defendant has filed six motions in limine seeking to exclude: (1) any claim by Plaintiff Rosales for property damage; (2) hearsay statements from an unidentified and undisclosed AutoZone employee at the accident scene; (3) evidence, testimony, or argument regarding Plaintiffs' financial condition or financial hardship experienced due to the subject accident; (4) vehicle repair estimates and any other evidence, testimony, or argument regarding the vehicle repair amounts or that the vehicle was "totaled;" (5) any evidence, testimony, or argument that the accident caused "fetal injury;" and (6) Dr. O'Connor, Dr. Arce-Lara, and Dr. Ellsworth from testifying at trial as well as any causation opinions from these three treating providers.  (Docs. 47–52).

Plaintiffs have filed nine motions in limine seeking to exclude: (1) references to and evidence of "litigious society, money as a motivating factor for lawsuits, and when Plaintiffs hired counsel;" (2) evidence or testimony of biomechanics and whether there were sufficient forces in the collision to cause Plaintiffs' injuries; (3) evidence or reference to Plaintiff Rosales' criminal convictions; (4) reference to or evidence of Plaintiff Rosales' attendance and participation in Plaintiff A.T.'s NICU stay; (5) any reference to or evidence of Plaintiff Rosales' drug use; (6) reference to or evidence of Plaintiff Rosales' prior physical assaults; (7) reference to or evidence of Plaintiff Rosales' prior motor vehicle accidents; (8) reference to or evidence of Plaintiff Rosales' sexually transmitted diseases ("STDs"); and (9) evidence or testimony of any potential collateral sources or insurance or the full sums of the amounts billed by Plaintiffs' medical providers.  (Docs. 57–64, 66). The Court will address each Motion in turn.

**A.    Defendant's Motions in Limine**

**1.    Defendants First and Fourth Motions in Limine (Docs. 47 & 50) – Vehicle Repair Estimates**

---

[2] A common theme arises in the parties MILs: alleging the party failed to identify and disclose witnesses and evidence.  Moreover, often, the parties do not precisely respond to the other parties motion.  This calls into question whether the parties made a bona fide effort to meet and confer before filing their  motions.

1    Defendant first seeks an Order excluding any claim by Plaintiffs for property
2    damages.  Defendant states that she "failed to disclose that she was even making a property
3    damage claim, let alone the computation of such damages and the documents on which the
4    computation is based . . . [and] . . . [t]he only exhibits Plaintiff Rosales produced which
5    related to the property damage were photos of her vehicle and a repair estimate."
6    (Doc. 47 at 2).    Plaintiffs assert that Defendant "cannot argue surprise or prejudice
7    regarding property damage" because they disclosed a repair estimate, Defendant was aware
8    that the vehicle was not repaired and [they] included a property damage claim in her
9    complaint." (Doc. 75 at 1-2).  Plaintiffs aver that "the inadvertent lack of property damage
10   in her disclosure statement does not constitute unfair surprise or prejudice." (*Id*.)  Not so.

11   Although, as here, a party may refer to incurring property damage in a complaint,
12   the federal rules of civil procedure require more.  (*See* Doc. 1-3 t 3; ln. 19).  Fed. R. Civ.
13   P. 26 (a)(A)(iii) provides that a party, without awaiting a discovery request, provide to the
14   other parties "a computation of each category of damages claimed by the disclosing party
15   - who must also make available for inspection . . . the documents or other evidentiary
16   material . . . on which each computation is based[.]" Fed. R. Civ. P. 37(c)(1) provides that
17   "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . the party is not
18   allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a
19   trial, *unless the failure was substantially justified or is harmless*."  So, unless Plaintiffs can
20   show that the failure to provide *a computation of each category* of damages, beyond
21   Rosales' deposition testimony, or vehicle repair estimate, she may not place it into evidence
22   at the trial.  *See Hill v. U.S. Dep't of Homeland Security*, 570 Fed. Appx. 667, 670 (9th Cir.
23   2014) (the court properly excluded evidence where disclosures did not include proper
24   computation of damages so it was unclear exactly what damages Plaintiff sought).

25   Relatedly, in her Fifth Motion in Limine, Defendant seeks an order excluding
26   vehicle repair estimates and "any other evidence, testimony, or argument regarding the
27   vehicle repair amounts or that the vehicle was 'totaled." (Doc. 50 at 1).  Defendant states
28   that Plaintiffs have not disclosed a property damage claim and even if she did, the "repair

estimates themselves do not show the actual amount incurred." (*Id*.)  Defendant states that Plaintiffs have "not retained biomechanical or accident reconstruction experts who may rely on repair estimates to calculate forces and determine impact severity." (*Id*. at 2). Defendant asserts that the estimates themselves are "not easy to read and understand without a foundational witness" which Plaintiffs have not offered.  (*Id*.)

Plaintiffs retort that the repair estimate is probative of the issues in the case and "omitting such evidence may be prejudicial to Plaintiff[s] and confuse or mislead the jury" because the estimate "provides evidence as to the extent of damage to [her] vehicle as it helps establish the potential cost of repair her vehicle would require."  (Doc. 78 at 1). Plaintiffs also assert that the repair estimate is admissible as a "business record" exception to the hearsay rule.  Plaintiffs proffer that a records custodian will lay the  foundation for this exception.  Plaintiffs do not say, however, who will testify about the repairs required by the car, or the opinion leading to the estimates.

As previously noted, claims of property damage must be accompanied by a computation of expenses incurred.  An estimate, without explanation, is insufficient under both Rule 26(a) and 37(c).  Whereas here, Plaintiffs have not proffered a witness to testify about the severity of damage caused by the crash impact, the estimate is unreliable. Moreover, introducing the estimate as a business record under Rule 803(6) requires that the witness have a first-hand knowledge of the business, its record keeping procedure and that it was prepared in the usual course of business.  Once authenticated, the estimate requires further explanation, so as not to confuse the jury. Apparently, no such witness was disclosed by Plaintiff, nor is one listed in the parties Joint Pretrial Order, (Doc. 54), so the Defendant has not had an opportunity to depose the witness who prepared the estimate.  To permit this evidence at trial, through someone other than the mechanic who assessed the cars damage and prepared the estimate would constitute inadmissible hearsay. To do so would result in jury confusion and prejudice to the Defendant.   The Plaintiff's vehicle repair estimate is therefore excludable under Rules 401, 403 and 803.

However, at the Final Pretrial Conference, Plaintiffs may inform the Court how their

failure to disclose the necessary computation of damages was substantially justified or harmless.  As the car repair estimate falls within this category of damages, the Court will reserve ruling on Defendant's Motions until that time.

Accordingly, the Court will withhold its rulings on Defendant's First and Fifth Motions in Limine (Docs. 47 & 50) until the Final Pretrial Conference.

### 2.    Defendant's Second MIL (Doc. 48) – Hearsay Statements[3]

Defendant seeks an Order excluding hearsay statements from an unidentified and undisclosed AutoZone employee at the accident scene. (*Id.* at 1).  Defendant states that "[t]he Arizona Crash Report identified a witness named Andres Alberto Lara, but the report narrative does not indicate what Lara told officers." (*Id.* at 2). Responding, Plaintiffs clarify that Mr. Lara *is* the AutoZone employee she referred to in her deposition. (Doc. 76 at 1).  The Court notes he is not listed as a witness in the Joint Proposed Final Pretrial Order.  (Doc. 55).  The Defendant presumes that either Officer Murillo or Ms. Rosales intends to introduce Mr. Lara's statement into evidence.  Defendant asserts that this statement is hearsay and not permitted under any exception.  (Doc. 55 at 2).

Plaintiffs respond that Mr. Lara's statements to Plaintiff Rosales fall under the excited utterance and present sense impression exceptions to the hearsay rule.  (*Id.* at 2). So, the Court presumes Ms. Rosales intends to testify that "[He] came out of the store and told her he saw the whole accident." (*Id.*)  This indicates that she will then repeat what he said he saw.  She states that she can testify about "the timeline of how soon after the crash" Mr. Lara made the statement so as to meet one of the exceptions.  (*Id.*)

"Hearsay" is a statement that "(1) the declarant does not make while testifying at the current trial . . . and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Hearsay is not permitted unless it meets an exception to Rule 802. Given that Mr. Lara's statement to the Defendant meets the

---

[3] Plaintiffs, in this and other responses, urge the Court to deny Defendant's Motion because she did not adhere to the Court's page limit.  The Court will not do so.  Notably, Plaintiffs themselves have not adhered to the Courts procedures resulting in numerous filing errors and they, too filed lengthy motions and responses.

definition of hearsay, it is impermissible unless it meets an exception to the hearsay prohibition.

Among the hearsay exceptions are when "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). Under the Presence Sense Impression exception, the statement "must be made while the declarant is perceiving the facts in question or immediately thereafter." *Commentary note* to Rule 803(1) (explaining that "it must be established that the statement was made contemporaneously with the event or immediately after the event."). An additional exception, excited utterance, is when a statement relates to "a startling event or condition made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The statement must be "made in response to a startling event during the trauma or stress of the event . . . [and] the event must be an extremely startling or shocking event." *See commentary note* to 803(2).

Defendant states that immediately after the accident, Plaintiff Rosales pulled her car into a driveway past the AutoZone entrance and spoke to Defendant and her passenger. (Doc. 48 at 2). Plaintiff Rosales testified at her deposition that an AutoZone employee approached her and informed her that he witnessed the accident from inside the store and that he saw Plaintiff's vehicle was fully within the turn lane. (*Id.*) Defendant states she never saw an AutoZone employee at the scene, however. (*Id.*) Defendant also states that no police officer immediately responded and that the Arizona Crash Report notes an officer arrived at 8:30 p.m. almost three hours after the 5:44 p.m. accident. (*Id.*) That Report does not indicate what, if anything, Mr. Lara said to the officer about what he saw. (*See* Doc. 48-3). So, it is unclear when, in relation to the accident, Mr. Lara approached the Plaintiff. Undoubtedly, based upon the pleadings, his statement is inadmissible as an excited utterance as the Defendant did not see him, including after she spoke to Plaintiff. It is also doubtful that the statement is admissible as a present sense impression as Plaintiff Rosales indicates that Mr. Lara saw the accident through the store window, yet she did not speak with him until after she moved her car, and after she spoke with the Defendant and her

passenger.

To be sure, given that Mr. Lara's statement is not included in a report or deposition, his statement to Plaintiff is wholly unreliable. *Cf.* Fed R. Evid. 807 ("a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception" if "the statement is supported by sufficient guarantees of trustworthiness"). His statement, as described by Plaintiffs, is plainly inadmissible hearsay for which there is no exception for its admission. Moreover, Defendants assert Plaintiff did not disclose him as a witness, so, she has not had an opportunity to depose him. Consequently, admission of this hearsay testimony would result in jury confusion and unfair prejudice to the Defendant under Rule 403.

**IT IS ORDERED** that Defendant's Motion in Limine (Doc. 48) is **granted**. Plaintiffs may not introduce the statement of Mr. Lara, the AutoZone employee.

### 3.    Defendant's Third Motion in Limine (Doc. 49) – Plaintiff's Financial Condition

Defendant seeks an Order "excluding evidence, testimony or argument regarding Plaintiff's financial condition or financial hardship experienced due to the subject accident." (*Id.* at 1). Defendant asserts that evidence of Plaintiffs' financial difficulties would "excite the sympathies of the jury and improperly influence their finding on the question of damages." (*Id.* at 1-2). Plaintiffs counter that they are "entitled to damages for her pain and suffering, and reasonable value of necessary household help." (Doc. 77 at 1). Plaintiff asserts that she would be prejudiced if not permitted to "[introduce] evidence of [her] financial strain, increased dependency on childcare, and financial assistance during this time." (*Id.* at 2).

Defendant's argument relies on a case which discusses testimony or evidence as it relates to the "wealth or poverty of the plaintiff." (Doc. 49 citing *Tom Reed Gold Mines Co. v. Berd*, 32 Ariz. 479, 484 (1927)). Plaintiff Rosales describes more specific evidence of financial damage, not her "wealth or poverty" status. Obviously, there is a misunderstanding of what evidence the Defendant intends to introduce which was not

resolved in the mandatory conferral process.

If Plaintiff Rosales has properly provided discovery through the Rule 26(a) discovery process of her financial damages caused by the accident, it may be introduced. *See* Fed. R. Evid. 401.  For example, Defendant states, and alleges in her Complaint, that at the time of the accident, she was employed by Bakyard Boyz Landscaping, from which she had to resign due to the injuries from the accident.  (*See* Doc. 81-1 at 9-10).  She also listed claimed damages of lost wages.

**IT IS ORDERED** that Defendant's Motion in Limine 3 (Doc. 49) is **denied**.  To the extent the Plaintiffs can show that testimony about her resulting financial situation is supported by previously disclosed evidence, it may be admitted at trial.

**4.    Defendants Fifth Motion in Limine (Doc.  51) – Fetal Injury**

Defendant seeks an Order excluding any evidence, testimony, or argument that the accident caused fetal injury.  She states that Defendant will not agree to "exclude any claim for fetal injury, despite their being zero support for such claim."  (*Id.* at 2).  Defendant again asserts that Plaintiffs "did not disclose any opinions or claims for fetal injury, they cannot elicit such opinions or present such evidence or argument at trial." (*Id.*)  The only claim Plaintiffs make, according to Defendant, is "that A.T. has scars from the way she positioned herself in the womb" as a result of the accident and/or her premature birth.  (*Id.*) Defendant asserts that this would force the jury to speculate because this is the only evidence of Plaintiffs' fetal injury.

Plaintiffs respond that Dr. Hirsh testified that the car accident "contributed to the early rupture of membranes . . . which set up milieu of changes that caused the premature birth of the baby." (Doc. 80 at 2).  Yet, Plaintiffs do not connect the premature birth, or describe the milieu of changes that result in A.T.'s scars, which is the evidence Defendant seeks to exclude.  So, unless Plaintiffs can provide the Court with evidence or expert testimony that the apparent scarring on A.T. is causally connected to the accident, Plaintiff's testimony will be excluded.

/ / / /

**IT IS ORDERED** that Defendant's Fifth Motion in Limine (Doc. 51) is **granted**. However, Plaintiffs may move for reconsideration of the ruling upon a proper showing.

### 5. Defendant's Sixth Motion in Limine (Doc. 52) – Testimony and Causation Opinions from Undisclosed Treating Physicians

Defendant seeks an Order excluding Defendant's witnesses Dr. O'Connor, Dr. Arce-Lara, and Dr. Ellsworth from testifying at trial, and any causation opinions from them because she did not disclose them in the Rule 26(a) process. (Doc. 52 at 1). Rather, Defendant merely named the healthcare facilities in which the these treating physicians work. Plaintiffs assert that "treating medical providers can give opinion testimony that embraces their expertise, so long as the basis for their testimony is personal knowledge, observation and perception." (Doc. 81 at 1). Plaintiffs then go on to describe the types of testimony permissible by a treating physician. Plaintiffs wholly ignore the gravamen of Defendant's Motion which is that she "failed to disclose the providers and did not comply with disclosure requirements for causation opinions." (Doc. 52 at 1). Rather, Plaintiffs claim that Defendant was aware of the facilities where she received treatment, so she should have known that a physician from each facility would testify as to her treatment. (Doc. 81 at 4). Not so.

The Courts Rule 16 Order states "Disclosure under Rule 26(a)(2)(A) must include the identities of **treating physicians** and other witnesses **who have not been specially employed to provide expert testimony** but who will provide testimony under Federal Rules of Evidence, 702, 703, or 705. (Doc. 14 at 3) (emphasis added). Rule 26(a)(3)(i) provides that "a party must provide to the other party and promptly file the following information about the evidence that it may present at trial other than solely for impeachment: the name . . . of each witness – separately identifying those the party expects to present and those it may call if the need arises [and] (iii) an identification of each document or other exhibit, including summaries of other evidence – separately identifying those items the party expects to offer and those it may offer if the need arises." Even if the three treatment providers were not hired or designated experts, Plaintiffs had a duty to

1  disclose them because they intend to rely upon their testimony to prove elements of their

2  claim.

3    The Joint Final Pretrial Order lists the following witnesses: Doctors Daniel

4  O'Connor, Carlos Arce-Lara, and Marc Ellsworth.  (Doc. 54 at 5-6).  The Court notes

5  Defendant's objection as to each because "the witness was not disclosed by Rule 26(a)(1)

6  of the Federal Rules of Civil Procedure and is thus properly excluded from trial pursuant

7  to Rule 37(c)(1)[.]" (*Id*.).  Essentially, Defendant argues that none of the proffered treating

8  physicians provided causation opinions during their treatment of Plaintiff Rosales and

9  permitting them to testify as to their treatment of her during random patient visits would

10  confuse the issues and the jury.  The Court agrees.

11    Merely listing the treating facility where Plaintiffs received care is wholly

12  insufficient.  Plaintiffs explain that "Defendant[] had sufficient notice of all treating

13  physicians' expected testimony in this case [as] [a]ll of Plaintiff's *treating medical*

14  *facilities* were disclosed." (Doc. 81 at 4) (emphasis added).  Furthermore, Plaintiffs state

15  that their amended discovery responses outlined the treatment Plaintiff Rosales underwent

16  at each facility and listed the dates of treatment.  (*Id*.).  Then, Plaintiffs outline that "*Each*

17  may testify regarding the Plaintiffs' injuries/medical condition to the incident."  (*Id*.).

18  Then, Plaintiffs state that "Defendants listed each provider within their own disclosure

19  statements" indicating that they were on notice of each of Plaintiff Rosales' providers.  (*Id*.)

20  Though this may diminish the prejudicial effect of non-specific disclosure of these treating

21  physicians, it does not end the inquiry.

22    Though not proffered as experts, treating physicians must provide the reports upon

23  which their conclusions are based, in particular where, as here, they intend to opine on

24  injuries caused by the accident.   In *Goodman v. Staples the Officer Superstore, LLC*, 644

25  F.3d 817 (9th Cir. 2011), the Ninth Circuit addressed, when a treating physician is required

26  to prepare an expert report compliant with Rule 26(a)(2)(B). There, the plaintiff tripped

27  and fell in an office supply store and filed a complaint in state court alleging the store

28  negligently allowed an unreasonably dangerous condition to exist which resulted in her fall

- 14 -

and serious injuries. *Id*. at 821. Under Arizona law, causation is an essential element of a negligence claim. *Id*. at 824 (citation omitted). The district judge prohibited the plaintiff's medical experts from testifying about causation in plaintiff's case-in-chief because she did not comply with her Rule 26(a)(2)(B) report disclosure obligations. *Id*. On appeal, as a matter of first impression, the Ninth Circuit held that "when a treating physician morphs into a witness hired to render expert opinions that go beyond the scope of a treating doctor's testimony, the proponent of the testimony must comply with Rule 26(a)(2)." *Id*. at 819–20.

Consequently, if Plaintiffs' treating physicians each intend to testify as to the injuries Plaintiff sustained, then opine on the cause attributing those injuries to the accident at issue, the physician morphs into a "causation" expert. *See Goodman*, 644 F.3d at 819–20. And, for each treating physician who intends to so testify, Plaintiffs must provide a report as to how he/she arrived at that opinion as to causation. Contrarily, should the treatment provider simply testify about his/her observation of an injury which he or she treated, without attributing a cause to that injury, the testimony may be admissible. Yet, Plaintiff bears the burden to show that she properly disclosed her intent to rely on the treatment *provider's* testimony. If Plaintiff cannot do so, any undisclosed witness intending to testify will be precluded as prejudicial to the Defendant, because she will have been deprived of an opportunity to depose them, review the treatment record upon which they will rely, and will be prejudiced in presenting her defense. Plainly, Defendant is entitled to know who the treatment provider is and understand what the treating physician's testimony is based upon.

Accordingly, at the Final Pretrial Conference, Plaintiffs must explain when they disclosed the identities (not the *facilities* in which they work) of each of her proffered treating physicians and the reports upon which their testimonies are based. Until then, the Court will grant Defendants Motion to preclude their testimony.

**IT IS ORDERED** that Defendant's Sixth Motion in Limine (Doc. 52) is **granted**. Treating physician witnesses not disclosed under Rule 26(a)(2)(A) and 26(a)(3)(i) and (iii),

1  and the Court's Rule 16 Scheduling Order, are precluded from testifying.   However,

2  Plaintiffs may seek reconsideration of the Court's ruling upon a proper showing that she

3  complied with the requisite discovery rules.

4  **B.    Plaintiff's Motions in Limine**

5  **1.    Plaintiffs' First Motion in Limine[4] (Doc. 57) – Arguments of "Litigious Society" & When Counsel was Hired**

7          Plaintiffs request an Order prohibiting Defendant "from any comments, arguments,

8  or allusions to living in a 'litigious society' " and "from bringing up when [she] hired an

9  attorney." (Doc. 57 at 2).  Plaintiffs' first request appears unnecessary as Defendant avows

10  having "no intention of arguing that it is improper for money to act as a remedy, that we

11  live in a litigious society, or that insurance rates will increase." (Doc. 69 at 1).  So, the

12  Court will hold Defendant to that and grant the Plaintiffs Motion as to that issue.

13          Defendant does not respond to the precise issue raised by Plaintiff Rosales that she

14  "not bring up when [Plaintiff] hired an attorney." Though, Defendant states that fact is not

15  privileged, the Court nonetheless finds the timing of hiring a lawyer in this case is irrelevant

16  to Plaintiffs' claims.  Fed. R. Evid. 401.

17          However, Defendant's Response expands upon the relevance of the date she hired

18  counsel.  That is, Defendant asserts that Plaintiff Rosales did not experience pain symptoms

19  until after her consultation with counsel on October 5, 2020.  (Doc. 69 at 2 ("It was not

20  until October 6, 2020, that Plaintiff Rosales presented for pregnancy complications and

21  attributed them to the subject accident")).   Defendant states her belief that Plaintiff's

22  treatment provider, Innovative Pain and Wellness, was on referral from her counsel.  (*Id.*)

23  So, Defendant posits she is entitled to elicit testimony of when Plaintiff hired counsel in

24  relation to her pain symptoms.  Yet, delayed pain or a delay in reporting pain is not unusual.

25  So, without more, the Defendant has not fully rebutted Plaintiffs' relevance argument and

26  reference to the date Plaintiffs hired their counsel will not be admitted.

27          Next, Defendant adds on that she is entitled to probe secondary gain on cross-

28  _____
[4] Plaintiff titles two of her Motions in Limine as number "1" (*see* Doc. 66). The Court will address each MIL in the Order appropriately filed.

examination of Plaintiff Rosales in her motive and intent in filing this claim, and of the treatment provider(s) motive, intent and bias evident by their relationship with referring counsel. (*Id*. at 2). Defendant's cited cases, including an out of district case, to support her argument are not instructive. As it is Defendant's burden to show how this evidence is relevant and admissible, she fails to make that showing here.

**IT IS ORDERED** that Plaintiff's First Motion in Limine (Doc. 57) is **granted**.

### 2.  Plaintiff's Second Motion in Limine (Doc. 58) – Biomechanic Opinions and/or Arguments of Insufficient Force

Plaintiffs seek an Order precluding evidence, opinion or argument or mention[5] "of biomechanics and whether there were sufficient forces in the collision to cause injuries." (Doc. 58 at 1). Specifically, Plaintiffs assert Defendant's witness, Dr. Hugh Miller, is a fact witness who opined that this was "a fairly minor accident." (*Id*. at 2). Plaintiffs argue that Dr. Miller is not an engineer or proffered as an expert and testimony about the severity of the crash and forces necessary to cause injury requires specialized knowledge. (*Id*.) So, Plaintiffs aver that Dr. Miller should be precluded from offering this opinion.

Defendant asserts that Dr. Miller examined Plaintiff Rosales at Chandler Regional/Dignity Health Clinic following the collision. (Doc. 67 at 9). After his examination, Dr. Miller described in his record that "it sounds as though it was a fairly minor accident." (Doc. 67-1 at 2). The statement is admissible as it relates to Plaintiff Rosales' statement during medical treatment and diagnoses, and it is probative of her description of the impact of the collision. Under Rule 801(d)(2)(A), the statement of a party opponent is admissible, albeit hearsay, if it was made "by the party in an individual . . . capacity." So, to the extent that Dr. Miller testifies about what Plaintiff said caused her injuries, they may be admitted. Moreover, as a treating physician, Dr. Miller's diagnosis of her injuries and their cause is admissible fact testimony. *See* Fed. R. Evid. 701 (stating that lay witness testimony "rationally based on the witness's perception" is admissible).

////

---

[5] The Court notes that "argument and mention" are overly broad terms that may cause confusion. For instance, the Court will not preclude counsel from arguing or mentioning in closing argument that this was a "minor accident."

**IT IS ORDERED** that Plaintiff's Motion in Limine (Doc. 58) is **denied**.

### 3.        Plaintiffs' Third Motion in Limine (Doc. 59) – Criminal History

Plaintiffs seek to exclude evidence or reference to Plaintiff Rosales' criminal convictions. (Doc. 59). Plaintiffs specifically seek to exclude evidence of or reference to a misdemeanor DUI Plaintiff Rosales pled guilty to in 2018 as well as her failure to complete fingerprints and failure to make scheduled payments. (Doc. 59 at 1).

Defendant argues that Plaintiff Rosales' conviction is relevant to show her "chronic marijuana abuse, as her own expert, Dr. Hirsch, acknowledged that marijuana use would cause negative effects on a normal pregnancy." (Doc. 79 at 1). Defendant asserts that Plaintiff Rosales "[m]edical records and criminal records show that she was not an occasional user; rather, she abused marijuana and was ordered to take substance abuse courses following her DUI conviction." (*Id*. at 2). She also notes that, based on Plaintiff Rosales' plea agreement, Rosales was using marijuana during her first pregnancy but suffered a miscarriage. (*Id*.)

Rule 404 controls the outcome of this issue. Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, this evidence may be admissible for another purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. at 404(b)(2). If admissible, this evidence must meet Rule 403's balancing test. *United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978).

Indeed, Dr. Hirsch stated during his deposition that consistent marijuana use can cause a premature delivery but noted that Plaintiff Rosales was not consistently smoking marijuana during this pregnancy. (Doc. 33-2 at 2). Dr. Hirsch stated that marijuana use one to two times per week is not excessive and that this would not have adversely affected her pregnancy. (*Id*. at 3). He based this opinion on internet articles, such as those published by the Mayo Clinic. (*Id*. at 4). In an affidavit Dr. Hirsch submitted for the *Daubert* motions in this matter, Dr. Hirsch states that, in his expert opinion, Plaintiff Rosales' prior

pregnancy history and marijuana use did not cause her premature delivery or rupture of membranes. (Doc. 33-1 at 4). Instead, he asserts that the rear-end accident she was involved in caused her preterm premature rupture of membranes and the subsequent need for a c-section. (*Id*.) Defendant can cross examine Dr. Hirsch, and even Plaintiff Rosales, using these facts without referencing her criminal convictions.

Importantly, there is no evidence proffered that Plaintiff was under the influence of marijuana when the collision occurred. Yet, Defendant argues that "[g]iven Plaintiff Rosales's DUI conviction, prior miscarriage while using marijuana, serious auto accident while intoxicated by marijuana, and her noted marijuana use during her pregnancy with A.T., there is a ***strong implication*** that she was frequently and excessively using marijuana." (Doc. 79 at 3) (emphasis added). Defendant essentially seeks to introduce propensity evidence, which is inadmissible. *See* Fed. R. Evid. 404(b)(1). Defendant's argument can be distilled to a simple one: that because Plaintiff Rosales has struggled with her sobriety in the past, she must have struggled with it while pregnant with A.T.—which she seeks to bolster through the criminal conviction evidence. (*See* Doc. 79). Defendant does not seek to admit this evidence for any admissible purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). So, the Court must exclude this evidence under Rule 404(b).

Even if this evidence were admissible, it would not meet Rule 403's balancing test. *Sangrey*, 586 F.2d at 1314. A jury may draw many "implications" from a DUI conviction—but Plaintiff Rosales' DUI is not at issue here. This evidence is minimally probative given the other evidence Defendant may probe into regarding Plaintiff Rosales' marijuana use. Defendant can limitedly cross examine Plaintiff Rosales and Dr. Hirsch about her marijuana use without referencing her criminal convictions. Evidence of her criminal convictions would be needlessly cumulative. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."). There is also a strong

likelihood that this evidence would unfairly prejudice Plaintiff Rosales and confuse the present issues.  *See id.*

    **IT IS ORDERED** that Plaintiff's Third Motion in Limine (Doc. 59) is **granted**. Defendant may not make reference to or seek to introduce evidence of Plaintiff Rosales' criminal convictions.

    **4.    Plaintiffs' Fourth Motion in Limine (Doc. 60) – NICU Stay**

    Plaintiffs seek an Order excluding "evidence, reference, opinion, argument or mention of [her] attendance and participation in A.T.'s NICU stay."  (Doc. 61 at 1). Plaintiffs asserts that Plaintiff Rosales' "injury and subsequent premature birth of A.T. is one of the main issues in this case."  (*Id*. at 2).  Plaintiff is concerned that mention of her "lack of presence for the baby's feedings, lack of presence at the baby's bedside, lack of demonstration or understanding of caring for the baby and social work consults" would be confusing, mislead the jury and result in undue delay.  (*Id*.)  Plaintiff states that the probative value of any mention of her lack of presence or attendance during A.T.'s NICU stay is outweighed by the prejudicial effect of the evidence.  (*Id*.).

    Defendant states that Plaintiffs are seeking special damages for Plaintiff A.T.'s stay in the NICU, along with general damages for Plaintiffs pain and suffering and loss of enjoyment of life.  (Doc. 73. at 2).  A.T. was delivered on December 18, 2020, and admitted to the NICU.  (*Id*.).  Defendant outlines the numerous times that the NICU attempted to contact Plaintiff Rosales because she had not been at A.T.s bedside for "a few days."  (*Id*.) Defendant also asserts that Plaintiff Rosales' whereabouts were unknown resulting in an extended NICU stay from A.T.'s date of discharge.  (*Id*. at 3).  Defendant offers that Plaintiff Rosales also did not participate in A.T.'s care and feeding and was "not demonstrating understanding of the necessary cares of the child."  (*Id*. at 2).  Defendant states that this evidence is probative of Plaintiff's claim for damages, particularly because she is seeking $$172,896 for A.T.'s NICU stay.  (*Id*. at 3).  The Court agrees.

    As noted, Plaintiffs' Complaint alleges she and A.T. "suffered extreme physical and mental pain and anguish and continues to suffer extreme physical and mental pain and

anguish . . . and enjoyment of life[.]" (Doc. 5-1 at 4).  She has also filed a claim for special and compensatory damages.  (*Id*. at 5).  Plaintiffs appear to be seeking damages in the full amount attributable to A.T.'s stay in the NICU.  So, whether all or part of the amount incurred is attributable to Plaintiff's absence is relevant to her damages claim and Plaintiff's duty to mitigate those damages.  Fed. R. Evid. 401.  So, evidence of A.T.'s extended NICU stay caused by Plaintiff Rosales' absence is admissible.

Moreover, Plaintiff Rosales intends to seek damages for mental pain and anguish. Should she testify that these claims stem from her loss of enjoyment of the birth experience and time spent with A.T. upon delivery, Defendant may cross-examine her related to evidence of her absence at the NICU, as it is probative of these claims.  Beyond her absences at the NICU, evidence of Plaintiff Rosales not demonstrating understanding of the necessary cares of the child is more prejudicial than probative of any issue to be tried. Fed. R. Evid. 403.  So, Defendant is precluded from referring to her lack of parental understanding.

**IT IS ORDERED** that Plaintiffs' Fourth Motion in Limine (Doc. 60) is **denied**.

### 5.    Plaintiffs' Fifth Motion in Limine (Doc. 61) –  Drug Use

Plaintiffs also seek to exclude any reference to or evidence of Plaintiff Rosales' drug use.  (Doc. 61 at 1).  They argue that evidence of Plaintiff Rosales' marijuana use is irrelevant unduly prejudicial, impermissible character evidence, and misleading.  (*Id*.) Defendant argues that this evidence is well-documented throughout her medical records, which her own expert testified would adversely impact a normal pregnancy. (Doc. 72 at 1). She argues that the evidence of Plaintiff Rosales' marijuana use is relevant and highly probative to causation, therefore, it is admissible.  (*Id*.)

This issue has already been decided by the Court's *Daubert* Order.  (Doc, 43). There, Defendant had argued that Dr. Hirsch should be excluded because he failed to consider alternative explanations for Plaintiffs' injuries.  (*Id*. at 8).  The Court found that Dr. Hirsch did not " 'utterly fail' to offer an explanation for why alternative causes were ruled out" because he "relied on Plaintiff Rosales extensive post-accident medical records,

which include her past obstetrical history, such as a miscarriage and a second pregnancy that resulted in a c-section at 39 gestational weeks as well as her ***use of marijuana prior to and <u>during</u> her pregnancy***." (*Id*. at 9). The Court concluded that Dr. Hirsch would be allowed to testify and that "[t]o the extent Defendant argues he did not 'adequately rule out' alternative causes for Plaintiff Rosales' injuries, this is a credibility determination that goes to the weight of his opinions, not their admissibility." (*Id*. (citing *Lopez v. Johnson & Johnson*, 654 F. Supp. 3d 997, 1007 (C.D. Cal. 2023) (concluding that evidence of additional factors an expert failed to rule out should be attacked by cross examination rather than exclusion)). By allowing Dr. Hirsch to testify as to the cause of Plaintiffs' injuries, the Court must also allow him to be cross examined on why he ruled out alternative explanations for the injuries. (*See* Doc. 43 at 9); *see also Stanley v. Novartis Pharms. Corp*., 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) ("When an expert rules out a potential cause in the course of a differential diagnosis, the 'expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation.' "). Accordingly,

**IT IS ORDERED** that Plaintiff's Fifth Motion in Limine (Doc. 61) is **denied**. Reference to or evidence of Plaintiff Rosales' drug use before and during her pregnancy is fair grounds for cross examination.

### 6.    Plaintiffs' Sixth Motion in Limine (Doc. 62) – Prior Physical Assaults

Plaintiffs next seeks to exclude any reference to or evidence of Plaintiff Rosales' prior physical assaults under Rules 401, 402 and 702. (Doc. 62 at 1). Plaintiff Rosales states that she has been the victim to several physical assaults perpetrated by her ex-boyfriend. (*Id*. at 2). She states that she has had to seek medical attention twice related to these assaults, on March 2, 2017, and April 14, 2018. (*Id*.) Defendant argues that, given Plaintiff Rosales' injury claims, evidence of her 2018 assault is relevant to causation and damages. (Doc. 71 at 1).

Defendant states that Plaintiff Rosales is seeking damages for treatment received at Innovative Pain and Wellness from March through July 2021.  (*Id.* at 2).  During that treatment, Plaintiff Rosales reported bilateral lumbar pain and underwent imaging, which showed disc bulging, neuroforaminal narrowing, and a disc herniation. (Doc. 71-1 at 2).  Defendant also notes that Plaintiff Rosales is seeking damages for a head injury with accompanying headaches and permanent left facial paralysis.  (Doc. 71 at 2).  Defendant argues that it should be able to cross-examine Plaintiff Rosales and Dr. Shayya about the two physical assaults Rosales was involved in.  (*Id.* at 3).  In March of 2017, Plaintiff Rosales went to Banner Casa Grande Medical Center with right lower quadrant abdominal pain, right flank pain, and right back pain after her ex-boyfriend punched her in her side.  (Doc. 71-3 at 1).  In 2018, Plaintiff Rosales was punched in the face by her ex-boyfriend which caused left eye bruising and tenderness.  (*Id.* at 12).  Plaintiff's assault injuries are to the same areas in which she alleges ongoing pain attributable to the collision.

The accident occurred on September 29, 2020—more than a year after these assaults.  (Doc. 44 at 2).  The Court finds that this evidence, while attenuated, is relevant as it has a tendency to make a fact more or less probable than it would be without the evidence.  *See* Fed. R. Evid. 401.  As Defendant notes, it is "entitled to cross-examine Dr. Shayya and Plaintiff Rosales regarding these prior assaults, as their existence tends to undercut Plaintiff Rosales's injury claims."  (Doc. 71 at 3).  One of the very reasons the Court did not exclude Dr. Shayya in its *Daubert* Order (Doc. 43) was because his failure to rule out a 2019 accident where Plaintiff Rosales was ejected from her vehicle was "a credibility determination that goes to the weight, not the admissibility, of his opinions, which ***should be addressed by cross-examination during trial***."  (*Id.* at 16 (citing *Stanley v. Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014)).  The same can be said for the 2018 assault.  Dr. Shayya did not consider this assault in coming to his expert opinion.  *Why* he did not consider this evidence, or whether any injury from the assault contributed to Plaintiff Rosales' injuries, is ripe for cross examination.  *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked

by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").  That is, in essence, the tradeoff for Dr. Shayya being allowed to testify at all.

As for Rule 403, the Court finds that, while this evidence is somewhat prejudicial, its probative value is not outweighed by whatever prejudicial effect it may have upon the jury.  *See* Fed. R. Evid. 403.  "Virtually ***all*** evidence is prejudicial or it isn't material."  *Old Chief v. United States*, 519 U.S. 172, 193 (1997) (O'Connor, J., dissenting) (citations omitted).  Any prejudice this evidence and testimony may hold is outweighed by its probative value.  Fed. R. Evid. 403.[6]

The risk of any unfair prejudice can also be mitigated through a limiting instruction. *See id*.  To protect Plaintiff Rosales interests, the Court can issue a limiting instruction directing the jury to consider the evidence only for its effect or contribution to Plaintiff Rosales' injuries.  If they wish for a limiting instruction to issue, Plaintiffs may submit proposed language for such a limiting instruction for the Court to read at the time any such evidence is introduced.

**IT IS ORDERED** that Plaintiffs' Motion in Limine.  (Doc. 62) is **denied**.

### 7.    Plaintiff's Seventh MIL (Doc. 63) – Prior Motor Vehicle Accidents

Plaintiffs next seek to exclude any reference to or evidence of Plaintiff Rosales' prior motor vehicle accidents.  (Doc. 63 at 1).  Specifically, Plaintiff Rosales seeks to exclude evidence or reference to a 2019 accident in which she was ejected from her vehicle. (*Id*. at 2).  Defendant previously asked the Court to exclude one of Plaintiffs' experts, Dr. Shayya, because he did not consider or even know about this accident when he reached his opinions.  (Doc. 28 at 10).  The Court considered its Motion and concluded that "[b]ecause Dr. Shayya was aware of Plaintiff Rosales's history of headaches as well as her concussion, the Court finds that his failure to rule out the 2019 accident is a credibility determination that goes to the weight, not the admissibility, of his opinions, which should be addressed by cross-examination during trial." (Doc. 70 at 4 (citing Doc. 43 at 16)).  This credibility

---

[6] As for Rule 702, the Court is not sure why Plaintiffs cited it here, but they only cited it once and did not develop a separate 702 argument.  (*See* Doc. 62).

1    determination is thus relevant and probative to Defendant's case. *See* Fed. R. Evid. 401,

2    403.

3        **IT IS ORDERED** that Plaintiff's Motion in Limine (Doc. 63) is **denied**.

4        **8.**    **Plaintiffs' Eighth Motion in Limine (Doc. 64) – STD History**

5        Plaintiffs next seeks to exclude any reference to or evidence of Plaintiff Rosales'

6    STD history. (Doc. 64 at 1). Plaintiffs state that Defendant will seek to introduce evidence

7    of her STD history in an attempt to show that they contributed to her premature delivery

8    of A.T. (*Id*. at 2). They argue that this is an attempt to get the jury to focus on Plaintiff

9    Rosales' sexual history which is irrelevant and would be highly prejudicial. (*Id*.)

10   Defendant argues that Plaintiff Rosales' STD history is admissible as it provides an

11   alternate cause for her preterm premature rupture of membranes. (Doc. 68 at 1). This

12   evidence is inadmissible.

13       Plaintiffs' own expert witness, Dr. Hirsch, admitted during his deposition that STDs

14   "can" impact a normal pregnancy. (Doc. 68-1 at 4). However, when asked whether

15   Plaintiff Rosales had any STDs during her pregnancy with A.T., Dr. Hirsch testified that

16   she did not have any. (*Id*.) He elaborated that Plaintiff Rosales had not had an STD since

17   "before her first pregnancy," which was around August or September of 2018.

18   (*Id*; Doc. 29-7 at 5). Defendant attempts to shoehorn in this evidence with the evidence

19   that Plaintiff Rosales tested positive for bacterial vaginosis one week before the subject

20   accident. (Doc. 68 at 2). Plaintiffs seek to exclude references and evidence to her STD

21   history, not this specific diagnosis. (*See* Doc. 64). Without more, the evidence of Plaintiff

22   Rosales' STD history is not relevant as she did not test positive for an STD during or in

23   close proximity to her pregnancy with A.T. *See* Fed. R. Evid. 401. This evidence also

24   appears, as Plaintiffs argue, to attempt to get the jury to focus on Plaintiff Rosales' sexual

25   history which the Court finds violates Rule 403 since this evidence has little probative

26   value yet is highly prejudicial. *See id*. at 403.

27       **IT IS ORDERED** that Plaintiff's Motion in Limine (Doc. 64) is **granted**.

28   Defendant is precluded from eliciting references to or introducing evidence of Plaintiff

1    Rosales' history of STDs.

2        **9.     Plaintiff's Ninth Motion in Limine (Doc. 66) – Collateral Source**
3               **Payments and Medical Bills**

4            In Arizona, an injured persons may sue in tort to recover the full amount of their

5    billed medical expenses caused by the tort, even though they may not have paid that

6    amount or (any amount) of medical expenses. The "collateral source rule" prohibits

7    tortfeasors from avoiding liability for damages in situations in which an injured party

8    has been compensated by a third party. *Lopez v. Safeway Stores, Inc.,* 212 Ariz. 198,

9    202, ¶ 13, 129 P.3d 487, 491 (Ariz. Ct. App. 2006). So, Plaintiffs may introduce

10   previously disclosed medical bills in the full amount of those expenses, even though

11   her insurer may have negotiated a lesser payment on her behalf.

12           **IT IS ORDERED** that Plaintiffs' Ninth Motion in Limine (Doc. 66) is **granted**.

13   Accordingly,

14           **IT IS ORDERED** that Defendant's Second (Doc. 48), Fifth (Doc. 51) and Sixth

15   (Doc. 52) Motion in Limine are **GRANTED**.  Her Third Motion in Limine (Doc. 49)

16   is **DENIED**.  The Court will withhold ruling on Defendant's First and Fourth Motions

17   in Limine (Docs. 47 & 50) until the Final Pretrial Conference is held on December 16,

18   2024.

19           **IT IS FURTHER ORDERED** that Plaintiffs' First, Third, Eighth and Ninth

20   Motions in Limine (Docs. 57, 59, 64 and 66) are **GRANTED**.  Their Second, Fourth,

21   Fifth, Sixth and Seventh Motions in Limine (Docs. 58, 60–63) are **DENIED**.

22           Dated this 13th day of December, 2024.

23

24

25   _____
     Honorable Diane J. Humetewa
26   United States District Judge

27

28